WILLIAM J. SWEENIE V. STATE OF NEBRASKA.

FILED NOVEMBER 9, 1899. No. 10,943.

1. **Criminal Law: WITNESSES: INDORSEMENTS ON INFORMATION.** After
   the trial of a criminal action has commenced, it is error for the
   court to permit the name of a witness for the state to be in-
   dorsed on the information.

2. ———: CONFLICTING INSTRUCTIONS. The mischievous effect of giv-
   ing an erroneous instruction to the jury is not cured by giving
   another which correctly states the principle of law involved.

3. **Adultery: EVIDENCE: PRESUMPTIONS.** No presumption of law,
   either conclusive or rebuttable, arises from the fact that an un-
   married man and a married woman had sexual intercourse on
   one occasion while dwelling together in the acknowledged rela-
   tion of master and servant.

4. ———: ———: ———. A jury might be authorized, in a proper
   case, to presume the existence of an adulterous relationship from
   sporadic acts of sexual commerce.

5. ———. By section 208 of the Criminal Code, it is unlawful for per-
   sons not joined together in wedlock to live in a state of adultery,
   either secretly or openly, whether they profess to live in the
   marital state or not.

ERROR to the district court for Butler county. Tried
below before BATES, J. *Reversed.*

*Hastings & Hall* and *C. H. Aldrich,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy
Attorney General,* for the state.

SULLIVAN, J.

William J. Sweenie was convicted and sentenced under that provision of section 208 of the Criminal Code which makes it unlawful for any unmarried man to "live and cohabit with a married woman in a state of adultery." One of the assignments of error is based on the fact that the court, during the progress of the trial, permitted the prosecuting attorney to indorse on the information the name of Louis Straka, who, being afterwards called as a witness, gave material testimony ι behalf of the state. The statute makes it the duty of the public prosecutor to indorse on the information at the time of filing the same the names of the witnesses by whom he expects to prove the crime charged, and it is further declared that "at such time before trial of any case as the court may, by rule or otherwise prescribe, he shall indorse thereon the names of such other witnesses as shall then be known to him." By the evident import of the language quoted the authority to indorse the names of witnesses on the information does not extend beyond the commencement of the trial. "There is no hardship in this rule," says MAXWELL, C. J., in *Stevens v. State*, 19 Nebr., 647, "and it is clearly in furtherance of a fair trial, and, being a provision of the statute, it can not be disregarded." Other cases affirming this view are: *Parks v. State*, 20 Nebr., 515; *Gandy v. State*, 24 Nebr., 716; *Miller v. State*, 29 Nebr., 437; *Rauschkolb v. State*, 46 Nebr., 658; *Fager v. State*, 49 Nebr., 439. The reception of Straka's testimony, over defendant's objection, was, therefore, reversible error.

It is conceded that Anna Lissa, with whom it is claimed the alleged crime was committed, lived as a servant in defendant's home during the period in question. This fact, together with the dissolute character of the woman and the testimony of her discarded paramour, tending to show the commission of a single adulterous act, constituted the salient features of the state's

case. Both Sweenie and Mrs. Lissa denied positively that there ever existed any criminal intimacy between them. They also disclosed circumstances indicating the existence of deterrent conditions and the lack of adequate opportunities. The court instructed the jury as follows: "Instruction No. 6. That if the jury find from the evidence, beyond a reasonable doubt, that the defendant and Anna Lissa had sexual intercourse during ·any portion of the time alleged in the information, then the rule of law is that it is presumed that the defendant and said Anna Lissa had sexual intercourse habitually as long thereafter as she was an inmate of defendant's dwelling-house." It being conceded that the parties lived in the same house, the practical effect of the instruction was to advise the jury to convict if a single act of adultery was proven beyond a reasonable doubt. This was error requiring a reversal of the judgment, notwithstanding the fact that in other paragraphs of the charge, given at the defendant's request, it was stated that habitual intercourse is an essential element in the crime of illicit cohabitation. The paragraph complained of stated a rule of evidence, while those, given at defendant's instance, related to matters of substantive law. The latter had no tendency to cure the error in the former. Besides it is well settled that they could not have had that effect even if they covered the same ground. See *Ballard v. State*, 19 Nebr., 609; *Barr v. State*, 45 Nebr., 458; *Metz v. State*, 46 Nebr., 547. Since the attorney general does not attempt to vindicate the action of the court in giving the instruction quoted, but contends merely that it was harmless when considered in connection with the instructions given at defendant's request, we pass the point without discussion. It may be well enough, however, to remark that a jury would be authorized, in a proper case, to presume the existence of an adulterous relationship, within the meaning of the statute, from sporadic acts of sexual commerce. But what we decide in this behalf, and all we decide, is that no presumption

of law, either conclusive or rebuttable, would arise from the fact that the defendant and Anna Lissa had sexual intercourse on one occasion while they were dwelling together in the acknowledged relation of master and servant.

It is contended by defendant that the statute does not cover cases like the one at bar. We think it does. We think the legislature intended by sections 208 and 209 of the Criminal Code to make it unlawful for persons not joined together in wedlock to live in a state of adultery or fornication, either secretly or openly, and whether they profess to live in the marital state or not. If they cohabit, if they live after the fashion of husband and wife, they are within the letter of the statute, and, likewise, it seems to us, within its spirit. Such seems to be the view taken in *State v. Way*, 5 Nebr., 283, where it is said by GANTT, J., in the course of the opinion: "To cohabit, according to the sense in which the word is used in the statute, means dwelling together as husband and wife, or in sexual intercourse." See, also, Clark, Criminal Law, p. 318; *Carotti v. State*, 42 Miss., 334; *Luster v. State*, 23 Fla., 339; *Commonwealth v. Leindsey*, 10 Mass., 153; *Wright v. Stewart*, 5 Blackf. [Ind.], 126.

It is further contended that the provision of the statute under which the prosecution was instituted is void for uncertainty, since there is no legislative definition of "a state of adultery." The contention is obviously without merit, and is only mentioned here to avoid the inference that it may have been entirely overlooked. The judgment of the district court is reversed, and the cause remanded.

REVERSED AND REMANDED.