STATE, Respondent, v. WALTER PURCELL, Appellant.

[228 Pac. 796.]

CRIMINAL LAW—WHITE SLAVE ACT—CONFLICT BETWEEN SESSION LAW
AND CODE—INSTRUCTIONS.

1. Where there is a conflict between an act as it was passed
by the legislature and as it appears in a revision or codification
of the entire body of the law, the act as originally passed will
govern.

2. The act denounced by section 9, chap. 205, p. 673, Sess. Laws
1911, is that of a male person who cohabits with a common prostitute and lives wholly or in part upon her earnings derived from
her unlawful occupation.

APPEAL from the District Court of the Fourth Judicial
District, for Blaine County. Hon. H. F. Ensign, Judge.

Judgment of conviction for felony. *Reversed* and *remanded*.

A. F. James and Morgan & Smith, for Appellant.

The term "live with" as employed in C. S., sec. 8276, and
in the information in this case, should be construed to mean
the same as the term "cohabit"; to live together as husband
and wife. (*United States v. Kuntze*, 2 Ida. 480, 21 Pac.
407; *Cannon v. United States*, 116 U. S. 55, 6 Sup. Ct. 278,
29 L. ed. 561; *Richey v. State*, 172 Ind. 134, 139 Am. St.
362, 87 N. E. 1032; 2 Words and Phrases Judicially Defined, 1243 et seq.; 1 Words and Phrases, 2d series, 750
et seq.; *State v. Naylor*, 68 Or. 139, 136 Pac. 889.)

The words "pimping defined," appearing in C. S., sec. 8276,
were not included in the act of the legislature by which
said section became a law and are not a part of the statute.
(Sess. Laws 1911, chap. 205, sec. 9, p. 676; C. S., sec. 1,
and historical note thereto appended.)

The language of the statute, sec. 8276, is so vague, indefinite and uncertain as to be unenforceable and void and

the information, in the charging part of which a portion of said statute has been copied and adopted, does not state facts sufficient to constitute a public offense. (*Capital Traction Co. v. United States*, 34 App. Cas. D. C. 591; *United States v. Reese*, 92 U. S. 214, 23 L. ed. 563; *Hayes v. State*, 11 Ga. App. 371, 75 S. E. 523; *Brown v. State*, 137 Wis. 543, 119 N. W. 338; *Griffen v. State*, 86 Tex. Crim. 498, 218 S. W. 494; *Augustine v. State*, 41 Tex. Crim. 59, 52 S. W. 77; *Czarra v. Board of Medical Supervisors*, 25 App. Cas. D. C. 443; *James v. Bowman*, 190 U. S. 127, 23 Sup. Ct. 678, 47 L. ed. 979; *State v. Gaster*, 45 La. Ann. 636, 12 So. 739; *State v. Partlow*, 91 N. C. 550, 49 Am. Rep. 652; *Cogdell v. State*, 81 Tex. Crim. 66, 193 S. W. 675; *Mathews v. Murphy*, 23 Ky. L. 750, 63 S. W. 785, 54 L. R. A. 415; *Louisville & N. R. R. Co. v. Commonwealth*, 99 Ky. 132, 59 Am. St. 457, 35 S. W. 129, 33 L. R. A. 209; *Stoutenburgh v. Frazier*, 16 App. D. C. 229, 48 L. R. A. 220; *Hewitt v. Board of Medical Examiners*, 148 Cal. 590, 113 Am. St. 315, 7 Ann. Cas. 750, 84 Pac. 39, 3 L. R. A., N. S., 896; *State v. Lantz*, 90 W. Va. 738, 111 S. E. 766; *United States v. Cohen Grocery Co.*, 255 U. S. 81, 41 Sup. Ct. 298, 65 L. ed. 516; *International Harvester Co. v. Kentucky*, 234 U. S. 216, 34 Sup. Ct. 853, 58 L. ed. 1284; *Collins v. Kentucky*, 234 U. S. 634, 34 Sup. Ct. 924, 58 L. ed. 1510; *American Seeding Machine Co. v. Kentucky*, 236 U. S. 660, 35 Sup. Ct. 456, 59 L. ed. 773; *City of Watertown v. Christnacht*, 39 S. D. 920, 164 N. W. 62.)

Changes made by a revision of the statute will not be regarded as altering the law unless it is clear that such was the intention, and, if the Revised Statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intention. (*Libby v. Pelham*, 30 Ida. 614, 166 Pac. 575; *Manson v. Village of Chisholm*, 142 Minn. 94, 170 N. W. 924; *People's Ferry Co. v. Casco Bay Lines*, 121 Me. 108, 115 Atl. 815; *Camden Auto Co. v. Mansfield*, 120 Me. 187, 113 Atl. 175; *In re Derinza*, 229 Mass. 435, 118 N. E. 942.)

The court cannot do that which the legislature perhaps intended to do but wholly failed to do. (*Holmberg v. Jones*, 7 Ida. 752, 65 Pac. 563.)

"To constitute the offense, the act must be both within the letter and spirit of the statute defining it." (2 Lewis' Sutherland on Statutory Construction, p. 965.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

If the intention of the statute is apparent, and if the words are sufficiently flexible to admit of some other construction, that construction will be adopted which will effectuate the intention of the legislature. (*In re Segregation of School District No. 58*, 34 Ida. 222, 200 Pac. 138.)

Words and phrases will be construed according to the context and the approved usage of the language. (C. S., sec. 9455; *Adams v. Lansdon*, 18 Ida. 483, 110 Pac. 280.)

The principle of strict construction does not exclude the application of common sense to the terms made use of in an act in order to avoid an absurdity which the legislature ought not to be presumed to have intended. (2 Lewis' Sutherland on Stat. Construction, sec. 528, p. 981; *Standard Oil Co. v. United States*, 221 U. S. 1, Ann. Cas. 1912D, 734, 31 Sup. Ct. 502, 55 L. ed. 619, 34 L. R. A., N. S., 834; Black on Interpretation of Laws, sec. 36; *State v. Dingman*, 37 Ida. 253, 219 Pac. 760; *State v. Morris*, 28 Ida. 599, 155 Pac. 296, L. R. A. 1916D, 573; *Ex parte Moore*, 38 Ida. 506, 224 Pac. 662.)

Instruction No. 7 given by the court is correct. (*Eddy v. Cunningham*, 69 Wash. 544, 125 Pac. 961; *State v. Everett*, 121 Wash. 322, 209 Pac. 519.)

Instruction No. 3 is not error. (*Eddy v. Cunningham, supra; State v. Kanakaris*, 54 Mont. 180, 169 Pac. 42.)

The court will give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties. (*State v. Sims*, 35 Ida. 505, 206 Pac. 1045; *State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860; C. S., secs. 9084, 9191; *State v. Marren*, 17 Ida. 766, 791, 107 Pac. 993.)

It is true that the code commissioner removed the ambiguity by the use of the words "or depend," but he did not change the law. His change was nothing more or less than in the nature of a recommendation to the legislature. The legislature, acting upon his suggestion and recommendation, enacted into law C. S., sec. 6779, as it now stands. (*Central of Georgia Ry. Co. v. State*, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518.)

The Compiled Laws of Idaho were passed as an act by the legislature and approved by the Governor of this state. It is, therefore, a valid law irrespective of authority or lack of the same on the part of the code commissioner to make any changes therein. (*Ex parte Donnellan*, 49 Wash. 460, 95 Pac. 1085.)

WILLIAM A. LEE, J.—Appellant was charged in the district court, for Blaine county, with a felony, the charging part of the information being:

"That the said Walter Purcell on the 1st day of June, 1923, in the county of Blaine, state of Idaho, then and there being, did wilfully, unlawfully, and feloniously then and there live with, and for a long time previous thereto, had been living with, one Madge Barber, she, the said Madge Barber, being then and there a woman of bad repute."

The cause was tried by the court with a jury and upon a verdict of guilty appellant was sentenced to imprisonment in the penitentiary for not less than two nor more than twenty years, from which judgment this appeal is taken upon fifteen enumerated errors.

The prosecution is based upon the wording of the statute as it appears in C. S., sec. 8276, which is the same as sec. 6779 of the Compiled Laws as revised by the code commissioner and reported to the fifteenth session of the legislature. The state contends that C. S., sec. 8276, correctly states the law, and the learned trial judge instructed the jury in the language of this section. The original act

passed by the legislature, Sess. Laws 1911, chap. 205, p. 673, commonly known as the White Slave Act, is entitled:

"An Act to prevent the importation into this state or the exportation from this state of women and girls for immoral purposes; prohibiting the keeping, maintaining, controlling, supporting or harboring of any woman or girl for immoral purposes, and prescribing the punishment therefor."

Section 9 of the act reads:

"Sec. 9. Any person who shall live with, in whole or in part, upon the earnings of a common prostitute or woman of bad repute, shall be guilty of a felony and, on conviction thereof, shall be punishable by imprisonment in the state prison for a period of not less than one nor more than twenty years."

This section, as modified by the code commissioner, reads:

"Sec. 8276. *Pimping defined.* Any person who shall live with, *or depend* in whole or in part, upon the earnings of a common prostitute or woman of bad repute, shall be guilty of a felony, and, on conviction thereof, shall be punishable by imprisonment in the state prison for a period of not less than one nor more than 20 years."

It differs from the law as enacted by the legislature, in two particulars: first, the words "Pimping defined" were added by the commissioner; and secondly, the words "or depend" were interpolated into the body of the section by the commissioner.

Counsel for appellant have filed a supplemental brief wherein they contend that the changes made by the commissioner are not a part of the law and materially change its meaning to the prejudice of appellant. The state replies, and admits that the meaning of the original section 9 as found in Sess. Laws 1911, chap. 205, is changed by the adoption of the Compiled Laws. We will first consider the question presented by these supplemental briefs.

In *Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575, the court had under consideration the construction to be given secs. 258 and 260 of the Revised Statutes of 1887 and the Revised

Codes of 1909. The law as originally enacted in 1875 contained the words "or to the use and benefit" before the words "of any person or persons." In the Revised Statutes of 1887 and the Revised Codes of 1909 the words "or to the use and benefit" were omitted. The court directed attention to section 5 of the Revised Statutes, which reads:

"The provisions of these Revised Statutes, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments."

This provision was carried forward as section 5 of the Revised Codes of 1909. The court held that notwithstanding these omissions the statute must be construed and applied as it was originally enacted in 1875. Section 5 as it appears in the Revised Statutes of 1887 and in the Revised Codes of 1909 is continued in force in the compilations that have since been made, being section 500:5 of the Compiled Laws of 1919, which is the code commissioner's report, and as C. S., sec. 9445, which is the last revision of the statute law of this state. The rule of law announced in the *Libby v. Pelham* case, therefore, is to the effect that where there is a conflict between an act as it was passed by the legislature and as it appears in a subsequent revision or codification of the entire body of the law, the act as originally passed will prevail.

Article 3, section 16, of the constitution provides:

"Sec. 16. *Unity of subject and title.* Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

In *Archbold v. Huntington*, 34 Ida. 558, 201 Pac. 1041, the constitutionality of C. S., sec. 8684, was challenged on the ground that it had never been adopted in the manner required by this provision of the constitution. The court said that the statutory provision in question having been passed by the territorial legislature prior to the adoption of the constitution, the provision did not apply since all

territorial laws were continued in force by the constitution itself.

Counsel for respondent very earnestly contend that notwithstanding the constitutional provision above quoted, there is much authority in support of the contention that the legislature may adopt in a single bill an entire code or revision of all the statute law without violating this provision. This question was exhaustively considered in *Lewis v. Dunne*, 134 Cal. 291, 86 Am. St. 257, 66 Pac. 478, 55 L. R. A. 833, wherein, *inter alia*, it is said:

"We cannot agree with the contention of some of respondent's counsel—apparently to some extent countenanced by a few authorities—that the provision of the constitution in question can be entirely avoided by the simple device of putting into the title of an act words which denote a subject 'broad' enough to cover everything. Under that view the title 'An Act Concerning the Laws of the State' would be good, and the convention and people who framed and adopted the Constitution would be convicted of the folly of elaborately constructing a grave constitutional limitation of legislative power upon a most important subject, which the legislature could at once circumvent by a mere verbal trick. The word 'subject' is used in the Constitution in its ordinary sense; and when it says that an act shall embrace but 'one subject' it necessarily implies—what everybody knows—that there are numerous subjects of legislation, and declares that only one of these subjects shall be embraced in any one act."

A number of state constitutions having this same provision expressly provide that the legislature may adopt an entire revision of all of the laws, and under such a provision a revision, when adopted, has the same force and effect as any session law.

The Compiled Statutes, which are now in general use, were authorized by Sess. Laws 1919, chap. 63, p. 197. That act authorized the clerk of this court to make a new compilation of all the laws, to number and arrange sections and titles of chapters and to make new ones; to incorporate

therein all the laws passed at that session. It will not be claimed that this act authorized the compiler to change the statute law, for the reason that a legislature cannot delegate its power to legislate. In *State v. Nelson,* 36 Ida. 714, 213 Pac. 358, it is said:

"The legislative power of the state is by article 3 of the constitution vested in the Senate and House of Representatives, and it is a fundamental principle of representative government that except as authorized by the organic law, the legislative department cannot delegate any of its power to make laws to any other body or authority. (12 C. J., p. 839, sec. 323, and collation of authorities from the several states cited under note 71; 6 R. C. L. 164.)"

"One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority." (Cooley's Const. Lim., 6th ed., 137.)

The assignments of error are not in the order of the record and a consideration of all of them will not be necessary to a determination of this case. Appellant's thirteenth assignment is predicated upon the court giving instruction No. 3, which is as follows:

"The jury is instructed that section 8276 of the Idaho Compiled Statutes provides in part as follows:

" 'Pimping defined. Any person who shall live with, or depend in whole or in part upon the earnings of a common prostitute or woman of bad repute, shall be guilty of a felony, etc.' "

As already indicated, this is not a correct statement of the statute upon which this prosecution must be founded, in two particulars: first, the words "Pimping defined" were added by the code commissioner; and secondly, the words "or depend" were by him interpolated in the statute. We are of the opinion that where a court undertakes to define an offense in the language of the statute, it should not materially change the same by the interpolation of words that may be prejudicial to the rights of the defendant.

Assignments 1, 2, 3 and 4 may be considered together as they relate to correlative matters. Instruction No. 7, given at the request of the state, is as follows:

"You are instructed that the words 'live with' as charged in the information in this case, means living together in a sense of habitual association, and the finding of comfort and companionship from day to day and from time to time in the society of a woman of bad repute."

When section 9 is considered in connection with the remaining provisions of Sess. Laws 1911, chap. 205, p. 673, it is clear that the act intended to be denounced by this section is that of a male person who cohabits with a common prostitute and lives wholly or in part upon her earnings derived from her unlawful occupation. It is equally clear that the words "live with" as used in this statute include the element of unlawful sexual relations as a necessary ingredient of the offense. The words "live with" as found in this statute are used in the sense of cohabiting together, as they are always used in a criminal statute in the sense of living together in the relation of husband and wife. (Words and Phrases, 2d series, vol. 1, p. 750; *Cannon v. United States,* 116 U. S. 55, 6 Sup. Ct. 278, 29 L. ed. 561; *Sweenie v. State,* 59 Neb. 269, 80 N. W. 815.)

The instruction as given ignores two essential elements of the offense defined by the statute, that is, living together in the sense of cohabiting, and depending in whole or in part upon the earnings of a woman of bad repute. Unless these words are given this meaning they would be equally applicable to a parent who lived with a daughter of bad repute or a daughter who lived with her mother if the mother were of bad repute. When the evils sought to be remedied by this act and the severity of the punishment imposed upon any who violated its provisions are considered, it is apparent that the legislature, in the offense denounced by section 9, intended thereby to make the act of a male person living with a common prostitute in an unlawful sexual relation, in whole or in part upon her earnings, a felony. We cannot conclude that the legislature, by the

language employed, intended to make anyone a felon who might be living with a woman of bad repute merely in the sense of habitual association, or even in the finding of comfort and companionship in so living. This instruction fails to include the necessary ingredients of the offense and defines the words "live with" in such manner that any person who habitually associated with a woman of bad repute or who found comfort or companionship in such association, however lawful the relationship might otherwise be, would come within the purview of this statute as the court defined its meaning in this instruction.

The information merely charges appellant with living with a woman of bad repute and does not state a public offense within the meaning of this statute. Appellant requested appropriate instructions with regard to the meaning of the words "live with" as the same are here construed, and the giving of this instruction as well as the refusal of the court to give appropriate instructions as requested, was reversible error.

The cause is reversed and remanded for further proceedings in accordance with the views expressed in this opinion.

McCarthy, C. J., concurs; Wm. E. Lee, J., concurs in the result.

BUDGE, J., Dissenting.—As will be observed from read-the majority opinion, this cause is reversed and the judgment vacated, primarily for the following reasons: First, the trial court instructed the jury that C. S., sec. 8276, provides as follows: "*Pimping defined.* Any person who shall live with, or depend in whole or in part upon, the earnings of a common prostitute or woman of bad repute, shall be guilty of a felony, etc." As a matter of fact, the original act, found in the Session Laws of 1911, chap. 205, sec. 9, p. 676, does not contain the words "pimping defined" or the words "or depend." These words were inserted in the Compiled Laws by the codifier and later became a part of the Compiled Statutes. It is the view of the writer of the opinion

of the court, which is concurred in by one of the justices, that the interpolation of the words "pimping defined" and "or depend" by the codifier of the Compiled Laws, and the subsequent adoption of the Compiled Laws by the legislature, was not a valid amendment of the original act as found in sec. 9, chap. 205, Sess. Laws 1911. Whether it was such an amendment, or whether it was merely a continuation, is to my mind, for the purposes of this case, wholly immaterial, since the appellant was not prejudiced by the action of the court in instructing the jury in the words of the Compiled Statutes. The words "Pimping defined" were used by the codifier merely as a head-note to indicate the character of the offense denounced. The, words "or depend" were inserted by the codifier to clear up a manifest ambiguity in the language of the statute. The codifying act authorized him to do this.

The appellant knew what he was charged with. He failed to call the court's attention to the fact that these four words were not found in the original act. He further failed to offer a proper instruction. Conceding, without admitting, that the instruction given was erroneous, the appellant should not be permitted to take advantage of this alleged error and secure a reversal of the judgment. That appellant was clearly proven to be a person that came within the provisions of C. S., sec. 8276, cannot, in the face of the record, be denied. It was alleged in the information, and proven upon the trial, that the appellant did wilfully, unlawfully and feloniously, on the first day of June, 1923, and for a long time prior thereto, live with a common prostitute or woman of bad repute. That he so lived openly and notoriously must be admitted. The record further shows that he aided and assisted the common prostitute with whom he lived in conducting a house of prostitution in the house in which they both resided, and transported to and from the house girls who were prostitutes. ·

Second, the majority opinion holds that under the provisions of chap. 205, sec. 9, Sess. Laws 1911, a male person cannot be convicted of living with a common prostitute

or woman of bad repute, which terms, as I construe the statute, are synonymous, unless it is charged in the information, not only that he lived with a common prostitute, but that he depended in whole or in part upon the earnings of the common prostitute. In other words, it is held that there are two essential elements of the offense defined by the statute, which must be alleged and proven: first, that he lived with a common prostitute and actually cohabited with her, and second, that he lived upon her earnings in whole or in part; otherwise, the information would fail to state a public offense. With this construction of the statute I find myself wholly out of accord. There are two offenses denounced by sec. 9, chap. 205, Sess Laws 1911: First, any person who shall live with a common prostitute (whether he cohabits with her or not is wholly immaterial), second, any person who depends in whole or in part upon the earnings of a common prostitute, whether he lives with her or not, is guilty of a felony. Sec. 9 is as follows:

"Any person who shall live with, in whole or in part, upon the earnings of a common prostitute, or woman of bad repute, shall be guilty of a felony."

Clearly, it was the intention of the legislature to denounce the crime of living with a common prostitute, as well as to provide adequate punishment to be inflicted upon a male person who depended in whole or in part upon the earnings of a common prostitute.

Under the allegations of the complaint in the instant case, it was entirely proper to permit the state to prove that appellant not only lived with a common prostitute, but that he actually cohabited with her. That he did both, covering a long period of time, is so clearly and conclusively established by the record that it must be conceded. There is no positive evidence that he lived upon her earnings (and he is not charged with that offense) other than proof of the fact that a cash register was kept in the house of assignation, and that when the appellant was in need of funds, he procured the same from the cash register for the purposes of

purchasing whatever was necessary for household uses and other purposes.

I find no error in the instructions of the court given or refused, and no prejudicial error in the matter of the admission or rejection of testimony. It has been repeatedly held by this court that all errors not prejudicial to a defendant in his substantial rights must be disregarded, and that such prejudice must be affirmatively shown on appeal. Neither, as above stated, am I of the opinion that the constitutional questions discussed in the majority opinion are material or necessary for a determination of this case, but think that no useful purpose would be served by a discussion of these questions, since the legislature no doubt, in view of the majority opinion, will by proper enactment meet the objections urged to the validity of C. S., sec. 8276. The purpose of this dissenting opinion is primarily to emphasize the necessity of proper legislation in this regard.