(No. 6050.   March 3, 1934.)

FILER HIGHWAY DISTRICT, a Body Politic and Corporate Within TWIN FALLS COUNTY, IDAHO, upon and Out of the Relation of W. F. ALWORTH, Respondent, v. RAY SHEARER, A. A. DAVIS, JOHN H. BLASS, and F. C. GRAVES, Appellants.

[30 Pac. (2d) 199.]

Frank L. Stephan and J. H. Blandford, for Appellants.

Sweeley & Sweeley, for Respondent.

HOLDEN, J.—In 1927 Ray Shearer and A. A. Davis were, and still are, commissioners of respondent Highway District. And in 1927, and up until the first day of January, 1930, John H. Blass was a commissioner of said district. On the first day of January, 1930, J. G. Winkle

succeeded Blass as a member of the Board of Commissioners of the district. And from May, 1925, up until April 1928, F. C. Graves was the secretary-treasurer of the district, and in April, 1928, H. W. Graves became and still is, secretary-treasurer of the respondent, and for many years the relator has been a resident within and a taxpayer of respondent Filer Highway District.

Commencing in the latter part of the year 1926, at meetings of the board, Commissioners Shearer, Davis and Blass discussed the matter of investing certain of the sinking funds of the district in the bonds of the Pacific Coast Joint Stock Land Bank and Bankers Joint Stock Land Bank, it appearing that during the last meeting of the board in December, 1926, the above-named Shearer, Davis and Blass, gave secretary-treasurer F. C. Graves oral instructions to purchase some of the bonds of the said Pacific Coast Joint Stock Land Bank, as well as some of the bonds of the said Bankers Joint Stock Land Bank, from the sinking funds of the district, and accordingly, later and on or about January 18, 1927, the said secretary-treasurer invested the sum of $5,163.89 (sinking funds) in five bonds of the Pacific Coast Joint Stock Land Bank, and thereafter and on or about March 14, 1927, secretary-treasurer F. C. Graves invested the further sum of $7,200.28 (sinking funds) in seven bonds of the Bankers Joint Stock Land Bank, making a total investment of $12,364.17. After the sinking funds of the district had been so invested, pursuant to oral instructions, and on April 9, 1927, a motion appears to have been adopted by the board, which motion reads as follows:

"Motion made and carried that the action of the secretary in purchasing $12,364.17 worth of joint stock and land bank bonds, pursuant to instruction of the board, be and is hereby ratified."

Following the investment of the sinking funds, the Bankers Joint Stock Land Bank went into liquidation, with the result that the district was paid the sum of $5,596.25, on account of the purchase of said bonds, leaving a balance

of $3,604.03, and on the date of the trial of this case, the said bonds of the Pacific Coast Joint Stock Land Bank had a market value of $2,000.

October 1, 1930, the relator wrote the following letter: "From W. F. Alworth
    in behalf of the Filer Highway District
"To
    The Filer Highway District Trustees,
"Gentlemen:

"Having examined the records of the District, I find that some twelve thousand ($12,000) dollars of the sinking funds, of the District, have been invested in violation of the law governing such investments, and consequently, the District is about to suffer a loss.

"I therefore, in behalf of the Filer Highway District, hereby, formally, demand that the said funds be restored to the District Treasury,

"Respectfully yours,<br>"(Signed)  W. F. ALWORTH."

January 17, 1931, the sinking funds so invested not having been restored to the district treasury, the relator commenced this action in the name and for the use and benefit of the respondent district, against Ray Shearer, A. A. Davis, John H. Blass, J. G. Winkle, F. C. Graves and G. H. Shearer, to recover the sinking funds so invested in said bonds. The case was tried to the court, sitting without a jury. After respondent rested, upon motion, the court dismissed G. H. Shearer and also dismissed J. G. Winkle so far as respondent's alleged case of damages against him was concerned. Judgment was rendered in favor of respondent and against the remaining defendants, to wit, Ray Shearer, A. A. Davis, John H. Blass and F. C. Graves for the sum of $12,145.87, it being also adjudged and decreed that the said bonds of the said Pacific Coast Joint Stock Land Bank be sold and the proceeds of the sale applied to the payment of said last-mentioned sum, *pro tanto,* from which judgment the said last-named persons appeal.

The 1925 session of the legislature passed an act, approved March 4, 1925, reading as follows:

"An Act relating to the investment of sinking funds. Be it enacted by the Legislature of the State of Idaho: Section 1. The treasurer of the State of Idaho, the City Council or City Commission of every city, the Board of Trustees of every village, the Board of County Commissioners of every county, the Board of Trustees of every school district, the Board of Commissioners of every drainage district, the Board of Directors of every irrigation district, and the officials of every other political subdivision in the State of Idaho, whenever there is in any sinking fund, now existing or hereafter created by authority of the laws of the state, an amount in excess of the requirements to pay bonds maturing within the current year, shall, so far as practicable, invest the same in interest-bearing general obligation bonds or treasury certificates lawfully issued by the United States of America, the State of Idaho, or any city, village, county, or school district in the State of Idaho. The State or any political division thereof may purchase for the sinking fund any bonds originally issued or assumed by it and keep the same alive in the sinking fund and resell the same, or any other investments of the sinking funds, when it may be deemed advisable to make more advantageous investments or to provide means for the redemption of maturing bonds. Approved March 4, 1925."

And the 1927 session of the legislature passed an act, approved March 14, 1927, reading as follows:

"An Act amending Chapter 66, title 11 of the Compiled Statutes of Idaho by adding thereto a new section denominated section 1505 A, validating the actions, obligations, contracts and liabilities of Highway Districts heretofore entered into or incurred and conferring power on such districts to levy and collect taxes to meet their obligations and liabilities. Be it Enacted by the Legislature of the State of Idaho:

"Sec. 1. That Chapter 66, Title 11 of the Compiled Statutes of Idaho, is hereby amended by adding thereto a new section denominated Section 1505 A, to read as follows:

" 'Sec. 1505 A. The Contracts, obligations and liabilities of highway districts heretofore entered into or incurred are hereby ratified and confirmed and every judgment· in favor of such district is ratified and confirmed as the right and property of such district, and every highway district is hereby granted the power to levy and collect such taxes as may be necessary to defray all expenses of prosecuting and defending actions and to pay any judgments and liabilities incurred against it.' Approved March 14, 1927.''

For a reversal of the judgment against them, appellants rely upon two propositions: First: That the purchase of the said bonds was ratified and confirmed by the said 1927 act of the legislature. And secondly: If not ratified and confirmed by the said act, then that this action is barred by the provisions of subdivisions one and three, of section 5–218, I. C. A.

The above-quoted 1927 act amended the highway district law of the state, to wit, Chapter 66, Title Eleven, of the Compiled Statutes (now Title 39, Chapter 15, I. C. A.) by adding thereto said section 1505 A. The chapter so amended in a general way and in so far as could be important or material here, provides for the organization of highway districts by filing with the clerk of the board of county commissioners of the county in which the proposed district is situated, a petition signed by a specified number of holders of title or evidence of title to a fixed percentage of the total area of land in the proposed district which would be assessable for the purposes of such district; provides for holding an election for the purpose of voting on the question as to whether the proposed highway district shall, or shall not, be organized; fixes the qualification of electors; provides for canvassing the returns by such board; authorizes said board to enter an order declaring the territory embraced in the proposed district duly organized, if a majority of the qualified electors vote in favor of the organization of the proposed district; provides for the appointment, qualification and fixes the terms of office of highway commissioners; fixes the corporate powers of the district and the general

powers and duties of the board of highway commissioners; provides that for the purpose of organization or for any of the purposes of said chapter 66, the highway board may, before making the tax levy in any year, incur an indebtedness not exceeding in the aggregate a sum equal to one-half of one per cent of the assessed valuation of all the property in the district subject to taxation; provides highway board shall have power to lay out, alter, create, maintain and abandon public highways within the district; provides for the levying and collection of taxes for the construction and maintenance of roads and bridges within the district, and for district purposes generally; provides that every highway district shall have power and authority to borrow money and issue therefor its negotiable bonds, for the purpose of the construction, improvement or repair of any of the highways within the district, for the purchase of material and machinery therefor, for the necessary expenses of the district in connection therewith, or for any or all of such purposes; provides for and fixes the manner in which highway districts may vote, issue and sell bonds, and for the annual levy of a sufficient sum to pay the interest on any bonds issued and sold, and also for levying an additional sum to provide a sinking fund for the payment at maturity of any bonds issued and sold.

From the above general outline of the provisions of said chapter 66, it will be observed that said chapter is directed to and solely covers the matter of the organization of highway districts, and clothing highway districts with power to construct, repair, improve and maintain highways, and to levy taxes, borrow money, and vote, issue and sell bonds for those as well as for any and all district purposes, in harmony with the declared policy and general plan of the state to provide and maintain better highways for the use and convenience of the traveling public.

Turning now to the title to said section 1505 A', we find that the legislature declared its purpose to be that of "validating the actions, obligations, contracts and liabilities of highway districts heretofore entered into or incurred

and conferring power on such districts to levy and collect taxes to meet their obligations and liabilities.'' And to that end and for that purpose the legislature enacted that ''the contracts, obligations and liabilities of highway districts heretofore entered into or incurred are hereby ratified and confirmed. . . . ''

Said section 1505 A having been added to and made a part of said chapter 66, the ''contracts, obligations and liabilities'' validated thereby must necessarily have been contracts and obligations entered into and liabilities incurred in the conduct of the principal business for which highway districts are organized, to wit, the construction, improvement and maintenance of highways. In the enactment of section 1505 A, it is clear that the legislature was concerned only with *highway districts* and the validation of the contracts and obligations entered into and liabilities incurred by highway districts within the scope of the powers conferred upon highway districts and the particular activities authorized by said chapter 66. On the other hand, in the enactment of the above-quoted 1925 act, the legislature was solely concerned with the matter of authorizing the state, counties, school districts and other political subdivisions to invest idle sinking funds, and in specifying the particular securities in which such sinking funds could be lawfully invested. The said 1925 act, and section 1505 A relate to wholly and entirely different matters.

There is not the slightest hint in the enactment of section 1505 A, that the legislature gave any thought to the matter of the investment of idle sinking funds by any political subdivision of the state, or to the securities in which such funds could lawfully be invested, or to validating the purchase of any bonds or securities whatsoever. Had the legislature intended to validate the purchase of bonds by highway districts, with sinking funds, it would have expressed that intention in appropriate words, and ''a legislative intention not expressed in some appropriate manner has no legal existence.'' (*In re Segregation of School Dist. No. 58*, 34 Ida. 222, 228, 200 Pac. 138.)

■ In construing legislative acts, it is not the business of the court to deal in any subtle refinements, but it is rather its duty to ascertain, if possible, from a reading of the whole act the purpose and intent of the legislature and give force and effect thereto. (*Swain v. Fritchman,* 21 Ida. 783, 125 Pac. 319; *Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127.)

■ We conclude that section 1505 A, *supra,* did not validate the purchase of the land bank bonds in question here.

■ Next, is this action barred by the provisions of subdivisions one and three, of section 5–218, I. C. A.?

The applicable part of said section, and those subdivisions, read as follows:

"5–218. Statutory liabilities, trespass, trover, replevin, and fraud.—Within three years.

"1. An action upon a liability created by statute, other than a penalty or forfeiture. . . . .

"3. An action for taking, detaining or injuring any goods or chattels, including actions for the specific recovery of personal property."

Appellant contends that respondent's cause of action is based either upon a liability created by statute, or for a wrongful conversion, and that in either event a recovery is barred by the above-quoted subdivisions of section 5–218, *supra.*

Whether this action is barred, as contended by appellant, depends upon a decision of the question as to whether the above-quoted motion, adopted by the highway board April 9, 1927, set the statute of limitations running. If the adoption of the motion, and the entry of the same in the minutes, had that effect, then the action is barred because it was not commenced until January 17, 1931, more than three years after the motion, attempting to ratify the purchase of the land bank bonds, was adopted.

The only requirement which the Highway District Law of the state makes concerning what minutes of meetings of

highway boards shall be made, is found in section 39–1517, I. C. A., and is as follows:

"The minutes of all meetings must show what bills are submitted, considered, allowed, or rejected."

. The Highway District Law does not require the publication of the minutes of the board, and further, the minutes containing the attempted ratification of the purchase of the bonds in question were not published.

Section 39–1532, I. C. A., provides and requires as follows:

"Annual financial statement of district.—On or before the first day of February of each year, the highway board shall make and file in its office a full, true and correct statement of the financial condition of such district on the first Monday of the preceding January, giving a statement of the liabilities and assets of the district on such first Monday of January; a copy of such statement shall be published in at least one issue of some newspaper published in the county."

It does not appear that an annual financial statement was either filed in the office of the district or published in any newspaper on or before the first day of February, 1928, following the purchase of the land bank bonds, showing that such bonds had been purchased.

Inasmuch as the Highway District Law does not require a minute to be made or published showing the purchase of securities by highway districts, with sinking funds, and that no minute or any record of the purchase of the said bonds was ever published, we conclude that the adoption of the motion by which it was attempted to ratify the purchase, did not constitute notice to the taxpayers of respondent district, or set the said statute of limitations running, and that this action was not barred.

Judgment affirmed, with costs to respondent.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.