## No. 20,074.

GEORGE H. FELLOWS, CITY MANAGER OF PUEBLO, ET AL., *v.*
VITO LATRONICA.

(377 P. [2d] 547)

Decided December 24, 1962.

Mr. GORDON D. HINDS, for plaintiffs in error.

Messrs. BELLINGER, FARICY & TURSI, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to the parties as follows: Plaintiffs in error as Pueblo or the city, and defendant in error as plaintiff.

The complaint contains two claims, viz:

(1) That the city is indebted to plaintiff for two weeks compensation for services as a city fireman, or alternatively for two weeks vacation; that the Civil Service Commission of Pueblo had directed the City Manager to grant plaintiff one or the other; and that although requested to do so the city had refused.

(2) That the "defendant, Pueblo, a Municipal Corporation and Local No. 3, International Association of Fire Fighters were at all times involved in this dispute governed by a work agreement"; that in accordance with one of the provisions of said work agreement, plaintiff, who is a member of said Local No. 3, requested an arbitration of his claim against Pueblo but the city refused to arbitrate the same. Plaintiff sought the entry of an order requiring the city to arbitrate the claim and to comply with the result thereof.

Pueblo filed its answer in which a number of defenses were set forth. We find it necessary to consider only the following:

(1) The complaint fails to state a claim upon which relief can be granted.

(2) The order of the Civil Service Commission was

"void, illegal and unconstitutional" and purported to order compensation to plaintiff in excess of that authorized by the ordinances of the city.

The case was submitted to the trial court upon stipulated facts. The work agreement between the union (Local No. 3 above mentioned) and Pueblo was made a part of plaintiff's complaint. It was entered into April 21, 1952. Article I thereof was captioned "Recognition and Scope" and reads as follows:

"The City recognizes the Union as the exclusive bargaining representative of, and this agreement shall apply to, all employees of the Pueblo Fire Department, with the exception of the Chief."

Other sections of the contract provided that the covered "employees" of the city should receive certain vacations with pay, additional vacation allowances "in lieu of holidays worked, at the end of each completed year of service," benefits from disabilities arising from accident or disease incurred while on duty, and other fringe benefits. Article XI of the contract is as follows:

"Any dispute concerning the terms of this agreement, or the working conditions hereunder, and which does not require a modification of this agreement, which can not be adjusted amicably *shall be submitted to arbitration.* * * * " (Emphasis supplied.)

It is stipulated that on May 6, 1953, plaintiff requested a vacation leave for the year 1953, from June 23 to July 13, and that this request was approved; however, he was injured on June 14, and was off duty by reason thereof until July 29. He received full compensation during this period of time. The administrative policy of the Pueblo Fire Department was that firemen took their vacations when they were scheduled to occur, without regard to matters that might intervene between the date of approval of vacation leave and the actual time the vacation was scheduled.

No good purpose would be served by detailing the

efforts that were made by plaintiff to secure a settlement of his claim, or by setting forth the rather burdensome and lengthy exchanges of correspondence between him and the city. Suffice it to say that on June 2, 1959, the attorney for plaintiff demanded that the claim be submitted to arbitration under the terms of the contract above mentioned. This demand was refused by the city.

By letter dated December 7, 1959, plaintiff by his attorney took the matter to the Civil Service Commission of the city where on December 9, 1959, the matter was tabled. January 6, 1960, the Civil Service Commission was informed by the personnel director that it was the opinion of the city attorney that the commission had no jurisdiction in this matter, and on January 20, 1960, the personnel director on advice of the city attorney declined to further participate in discussions of the commission relating to plaintiff's claim. On or about February 10, 1960, in an action not recorded in their official minutes, the members of the Civil Service Commission in a letter addressed to George Fellows, City Manager, announced as their unanimous opinion that "the question of Vito LaTronica be resolved in his favor; i.e., two weeks' pay or time off." Said letter was read to the city council at its meeting of February 10, 1960, but no action was taken thereon by the council other than to receive and file the same.

From the rather lengthy stipulation of facts (much of which concerns matters immaterial to the controlling question) it is admitted that the contract with the union purported to make provision for a vacation with full pay, and for sick leave with full pay. It is admitted that plaintiff took sick leave and received his pay and that he took no vacation and received no pay for absence on vacation. It is admitted that he could not take vacation and sick leave at the same time and receive double pay therefor, even under the provisions contained in the contract. There is no provision of the Pueblo charter

authorizing the making of collective bargaining agreements with labor unions representing employees of the city. Accordingly this opinion should not be construed as decisive of any issue arising under a contract with a labor union where specific charter provisions or statutory authority exist for such contract.

The trial court Ordered, Adjudged, and Decreed: "THAT defendants do immediately comply with Plaintiff's demand for arbitration of his claim in accordance with Article XI of the work agreement."

The city seeks review by writ of error.

Questions to be Determined.

First. *Does the city of Pueblo, under the facts disclosed by this record, have power to enter into a binding contract or "working agreement" with a labor union representing members of the city fire department, by which the municipality becomes bound to pay the salaries, provide vacations with pay, sick leaves with pay, and other fringe benefits as provided therein?*

 This question is answered in the negative. An examination of pertinent provisions of the Home Rule Charter of Pueblo clearly indicates that it was the intention of the people of the city to insure that the compensation, working conditions, vacations, sick leaves, and other benefits connected with employment by the city, were matters exclusively within the legislative function of the city. The duly elected representatives of all the people who are chosen to function in a legislative or executive capacity cannot abdicate or bargain away the continuing responsibility which rests upon such representatives to exercise their official judgment in transacting the public business committed to their care. As stated by H. Eliot Kaplan in his recent work on "The Law of Civil Service," at page 333:

"* * * Thus far no court has viewed as binding or valid any agreement between government management and public employees, whether consummated through a process of assumed 'collective bargaining' or 'collective

negotiations,' or by any other semantic term. On the contrary, wherever the issue has been raised the courts have refused to recognize any such agreements as binding on the government, and in a number of cases have held the public agencies without authority to make such 'contracts.' * * *."

The following cases have held that public officers do not have authority to enter into collective bargaining agreements with public employees. *State v. Brotherhood of Railroad Trainmen,* 37 Cal. 2nd 412, 232 P. (2d) 857 (1951), Cert. Den., 342 U. S. 876; *Miami Water Works Local #654 v. Miami,* 157 Fl. 445, 26 So. 2nd 194 (1946); *Mugford v. Mayor and City Council of Baltimore,* 185 Md. 266, 44 Atl. 2nd 745, 162 A.L.R. 1101 (1945); *Springfield v. Clouse,* 356 Mo. 1239, 206 S.W. (2d) 539 (1947); *Cleveland v. Division of Amalgamated Assn.,* 30 Ohio Ops. 395, (the text of this case may be found at p. 173, Rhyne Labor Unions and Municipal Employee Law [1946], (1945); *Nutter v. Santa Monica,* 74 Cal. App. 2nd 292, 168 P. (2d) 741.

■■ The reasoning of most of the reported cases is that the employer-employee relationship in government is a legislative matter which may not be delegated. Such contracts if permitted to stand would result in taking away from a municipality its legislative power to control its employees and vest such control in an unelected and uncontrolled private organization (a union). In the case of *Springfield v. Clouse,* supra, it was said:

"The whole matter of qualifications, tenure, compensation and working conditions for any public service, involves the exercise of legislative powers. Except to the extent that all the people have themselves settled any of these matters by writing them into the constituion, they must be determined by their chosen representatives who constitute the legislative body. It is a familiar principal of constitutional law that the legislature cannot delegate its legislative powers and any attempted delegation thereof is void. [Citing cases] If

such powers cannot be delegated, they surely cannot be bargained or contracted away; and certainly not by any administrative or executive officers who cannot have any legislative powers. Although executive and administrative officers may be vested with a certain amount of discretion and may be authorized to act or make regulations in accordance with certain fixed standards, nevertheless the matter of making such standards involves the exercise of legislative powers. Thus qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of lawmaking and cannot be the subject of bargaining or contract. Such bargaining could only be usurpation of legislative powers by executive officers; and, of course, no legislature could bind itself or its successor to make or continue any legislative act. * * *"

We are in accord with the views above set forth. A proper exercise of the legislative function might well involve consultation and negotiation with spokesmen for public employees, but the ultimate responsibility rests with the legislative body and, under the record here presented, that responsibility cannot be contracted away. For a complete annotation on the question see 31 A.L.R. (2d) 1142.

Second. *Does the fact that the Civil Service Commission saw fit to announce as its opinion that "the question of Vito LaTronica be resolved in his favor; i.e. two weeks' pay or time off," have any legal significance or confer any rights upon the plaintiff?*

■ This question is answered in the negative. Much of what has already been said is pertinent to the question. There is nothing whatever in the delegation of powers to the Pueblo Civil Service Commission warranting the assumption of jurisdiction by it to enter an order of any kind in the dispute between the plaintiff and the city. Its "opinion" has no legal force or effect.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

Mr. Justice Hall concurs in the result.

Mr. Justice Pringle specially concurs.

Mr. Justice Pringle specially concurring:

I am of the opinion that the collective bargaining agreement under consideration, as presented by the record here, had no proper legislative authorization.

That public employees may organize in unions and may designate a representative to present their views as to terms and conditions of employment to the body charged with the duty of setting such terms and conditions if the body chooses to hear them seems now to be generally accepted. Agreements reached between the negotiating parties may be translated into effect by proper legislative action, providing such agreements do not conflict with constitutional, charter or statutory provisions.

I am of the further opinion that proper legislative authority permitting municipalities to voluntarily enter into limited collective bargaining agreements with respect to terms and conditions of employment does not involve an improper delegation of a legislative function. The fact that the municipality engages in collective bargaining does not necessarily mean that it has surrendered its decision making authority with respect to public employment. The final decision as to what terms and conditions of employment the municipality will agree to, or whether it will agree at all, still rests solely with its legislative body. The public employer can, and frequently does, place its own terms and conditions in effect rather than those requested by the bargaining agents. For a full discussion of these points, see Anderson, *Labor Relations in the Public Service,* 1961 Wis. L. Rev. 601.

Of course, collective bargaining contracts with municipalities, when authorized, are surrounded by many limitations because they deal with public employment,

public budgets and public funds. The legislative body can not surrender policy making powers which are delegated to it by constitution, charter, or statute. The validity of each collective bargaining contract, therefore, depends upon its precise terms and the subject matter covered.