423 P.2d 999

LOCAL UNION 283, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and Local Union 370, International Union of Operating Engineers, Plaintiffs-Appellants,

v.

W. L. ROBISON, Commissioner of Labor, State of Idaho, Defendant-Respondent.

No. 9910.

Supreme Court of Idaho.

Feb. 24, 1967.

McClenahan & Greenfield and Weldon S. Wood, Boise, for appellants.

Allan G. Shepard, Atty. Gen., and R. Michael Southcombe, Deputy Atty. Gen., Boise, for respondent.

SMITH, Justice.

Appellants commenced this mandamus proceeding seeking to compel the Idaho State Commissioner of Labor to investigate a labor controversy and to certify employee representatives for the municipal employees in the City of Burley, Idaho. The district court, pursuant to respondent's motion, entered summary judgment dismissing the proceeding.

In January 1965, appellants petitioned the district court for writ of mandate to be directed against respondent, Idaho State Commissioner of Labor. The petition alleged that appellants, hereinafter sometimes referred to as the Unions, had obtained 36 authorization cards from the approximately 45 employees of . the City of Burley. Those employees labored in the municipality's electrical, cemetery, street, water, golf course, sanitation, and shop departments. On July 1, 1965, and at various times thereafter, the Unions advised the Commissioner of Labor that a question had arisen concerning the representation of Burley's municipal employees and demanded that the Commissioner investigate the controversy and certify the employees' selected representatives. The Unions relied upon the

mandatory provisions of I.C. § 44–107, which provide:

"In order to insure employers, employees, and the general public, the full benefits of this act, the commissioner shall, when a question arises concerning the representation of employees in a collective bargaining unit, investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected. In any such investigation the commissioner shall provide for an appropriate hearing upon due notice, and may take a secret ballot of employees to ascertain such representatives. In all cases where a secret ballot is taken, the ballot shall be prepared so as to permit of a vote against representation by anyone named on the ballot; provided, however, that nothing in this section shall be construed as authorizing the commissioner to conduct an election on any matter which is within the exclusive jurisdiction of any federal act or board; and, provided further that no election shall be directed in any bargaining unit or subdivision within which, in the preceding twelve (12) month period, a valid election was held.

"The commissioner may establish such rules or regulations as he deems appropriate to effectuate the policies of this act for the filing of petitions for investigation and certification by employees or their representatives."

On September 30, 1965, the Commissioner informed the Unions that he refused to undertake any investigation or certification as demanded by the Unions.

The Commissioner filed a return to the Unions' petition, admitting its material allegations, and moved for a summary judgment under I.R.C.P. 56. The trial court granted the Commissioner's motion on the ground that the Commissioner's statutory duties had no application to labor controversies in public employment. The Unions appeal from the trial court's judgment dismissing the Unions' petition for writ of mandate.

The sole question presented is whether the provisions of I.C. § 44–107, concerning the State Commissioner of Labor's duties in the determination of employee representation, apply to persons engaged in public employment. If the provisions do apply, the duties of the Commissioner are mandatory and the Commissioner must proceed to investigate and resolve the question of representation among Burley's city employees.

Section 44–107 is ambiguous insofar as the language neglects to state expressly whether government employees are included within its purview. In the interpretation of an ambiguous statute, the court will examine the enactment and amendments thereto as a whole to ascertain the legislative intent, rather than attempt to focus upon the ambiguous section *in vacuo*. John Hancock Mut. L. Ins. Co. v. Neill, 79 Idaho 385, 319 P.2d 195 (1957); Filer Hwy. Dist., etc. v. Shearer, 54 Idaho 201, 30 P.2d 199 (1934); Swain v. Fritchman, 21 Idaho 783, 125 P. 319 (1912).

Section 44–107 was enacted as Section 7, Chapter 254, of the 1949 Idaho Session Laws. Chapter 254 established the State Department of Labor directed by a Commissioner of Labor vested under Sections 3 through 8 with enumerated powers and duties. Section 3 directed the Commissioner to acquire and publish information pertaining to "labor, relations between employees, employers and the public, hours of labor, wages and working conditions, including safety and sanitary standards and practices, the best means of minimizing the economic effect of disputes between workers and employers, and of promoting the welfare of all working people." Section 4 authorized the Commissioner to "enter places of employment covered by this Act * * * and inspect safety and sanitary conditions * * *." Violations of state law and administrative regulations were to be reported to the Industrial Accident

Board. Section 5 provided that the Commissioner should cooperate with the Industrial Accident Board in the administration of the safety provisions of the Workmen's Compensation Law. Section 6 stated that, "[u]pon the request of any party to an actual or potential labor dispute, the commissioner shall have the power to mediate in such dispute. He shall use his best efforts to conciliate and resolve such dispute among the disputants * * *." Section 7, now I.C. § 44–107, supra, has been amended since its enactment to provide that no election shall be held within twelve months of a preceding election, and that the Commissioner may promulgate rules appropriate to effectuate this act. Section 8, now I.C. § 44–108, enumerates two occupations, i.e., agricultural labor and domestic service in homes, as not covered by the Act.

The 1965 Legislature amended the Act to provide more efficient sanctions against recalcitrant employers. I.C. § 44–104A was added so as to enable district courts, on petition by the Commissioner, to enjoin the "trade or occupation" of any employer who refused to comply with the Commissioner's orders or recommendations. I.C. §§ 44–107A and 44–107B were also added and provide as follows:

"44–107A. Employers and bargaining agent are required to negotiate.—Whenever the commissioner of labor designates a bargaining agent for a bargaining unit as provided in section 44–107, both the employer and the designated bargaining agent must bargain in good faith."

"44–107B. Penalties for violations.— Any employer or any employee or union or union officer violating the above provisions of sections 44–107 and 44–107A shall, upon conviction thereof by any court of competent jurisdiction, be punished by a fine of not less than $50 nor more than $300, or by imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment."

The 1963 amendments to I.C. Title 44, chap. 1, (S.L. '63, chap. 110) amending I.C. § 44–107 and adding I.C. §§ 44–107A and 44–107B, deal with the same subject matter as was treated under I.C. § 44–107, as originally enacted in 1949, i.e., collective bargaining. Those three sections are closely interrelated, so that the effectiveness of the 1949 legislation depends upon enforcement of the subsequent criminal provisions, that is, after the Commissioner certifies the representative of employees in a collective bargaining unit, it then becomes the employer's duty to negotiate in good faith with his employees' designated representative; should the employer fail to comply with such statutory duty, he becomes subject to the criminal penalties of I.C. § 44–107B.

Those sections of Title 44, chap. 1, are in pari materia. Consequently, the legislative policy underlying the 1949 certification statute presumably also underlies the subsequent amendments. 2 Sutherland, Statutory Construction § 5201 (3d ed. 1943).

The use of general language in a statute is insufficient to indicate a legislative intent that the government should fall within the statutory coverage. Legislative acts are normally directed to activities in the private sector of society and effect a modification, limitation, or extension of the private individual's rights and duties. Under our political system, the individual is relatively free to pursue his own self-interest, but the goverment, which is representative of the people, must act in a disinterested manner in the public interest. The government's objectives are to promote the health, safety, morals and general welfare of the whole political community and not to pursue commercial gain. A judicial rule of statutory construction, whereby broad language in a statute is construed to govern the conduct of the state and its political subdivision, would undoubtedly result in dire consequences. Therefore, in order to maintain the operations of state and local government on an efficient, unimpaired basis, this court will not interpret

broad language in a statute "to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act." United States v. Hoar, 26 Fed.Cas. p. 329, No. 15,373 (C.C. Mass.1821). See cases cited in Twin Falls County v. Hulbert, 66 Idaho 128, 156 P.2d 319 (1945), rev'd 327 U.S. 103, 66 S.Ct. 444, 90 L.Ed. 560.

We are not persuaded that the ambiguous language employed in the certification statute, I.C. § 44–107, and in the related penal sections, I.C. §§ 44–107A and 44–107B, demonstrates a legislative intent to inaugurate a mandatory system of collective bargaining in governmental employment. We hold that the duties of the Commissioner of Labor, pursuant to I.C. § 44–107, do not extend to questions of representation in public employment, of employees in a collective bargaining unit.

Judgment affirmed. Costs to respondent.

McQUADE and SPEAR, JJ., concur.

TAYLOR, Chief Justice, with whom McFADDEN, Justice, concurs (concurring specially):

I agree that a general statute, which is ambiguous on the point, should not by construction be made to include agencies of government. However, I do not believe the decision in this case should rest upon such narrow ground. Thus limited, the decision tends to infer that the legislature by amending the statute could make it applicable to public employment. Such an enactment would constitute an attempt to authorize governmental officers to delegate to, or share with, a private organization, the sovereign powers and duties with which they are charged.

The legislature cannot delegate its constitutional power to any other authority. Idaho Savings & Loan Association v. Roden, 82 Idaho 128, 350 P.2d 225 (1960); State v. Purcell, 39 Idaho 642, 228 P. 796

(1924); State v. Nelson, 36 Idaho 713, 213 P. 358 (1923).

Except as to police powers granted directly by the Constitution (art. 12, § 2) cities have and may exercise only such powers as are granted by the legislature. Municipal officers, both elective and appointive, have and may exercise only such powers as are granted by the legislature, and they must perform the duties imposed upon them by law, I.C. Title 50. The city council, like the legislature, cannot delegate its legislative power to any other authority. It cannot share that power with any private organization. Municipal officers, acting within the authority given them, are in the exercise of a portion of the sovereign power of the state; it is not theirs to deal with as they see fit. Any attempt on their part, by contract or otherwise, to alienate or dilute their official authority, is void. Their discretionary powers are entrusted to them by those who put them in office—ultimately the electors. These powers they are bound to exercise in the interest of the electorate as a whole. It would be inimical to the public trust reposed in them to permit such officers, in the discharge of that public trust, to be subjected to pressure or coercion by any private organization.

That the employees of the city of Burley may organize for social or fraternal benefits is not questioned. For that purpose they need no union representatives. The representatives or agents sought by this proceeding are bargaining agents within the terms of the statute. The purpose of the certification sought from the Commissioner is to enable plaintiffs to conduct negotiations, and bargain, with the city officers as to qualifications, tenure, wages, working conditions of the city employees, and to enforce such bargaining, and any agreements resulting therefrom, as provided by the statute. The qualifications, tenure, terms, and conditions of public employment are subject to the continuing authority of the governing body. They cannot be permanently fixed, or removed from

that authority, by contract, nor can they be subjected to the will of a private organization. Nutter v. City of Santa Monica, 74 Cal.App.2d 292, 168 P.2d 741 (1946).

A statement of the proposition is sufficient to indicate, not only that the legislature never intended such a result, but also that it could not under our constitution thus subvert, or authorize the subversion, of the sovereign will.

In Fellows v. LaTronica, 151 Colo. 300, 377 P.2d 547, 550 (1962), the Colorado court quoted an earlier Missouri case, City of Springfield v. Clouse, 356 Mo. 1230, 206 S.W.2d 539, 545 (1947), and commented as follows:

" '[t]he whole matter of qualifications, tenure, compensation and working conditions for any public service, involves the exercise of legislative powers. Except to the extent that all the people have themselves settled any of these matters by writing them into the constitution, they must be determined by their chosen representatives who constitute the legislative body. It is a familiar principal of constitutional law that the legislature cannot delegate its legislative powers and any attempted delegation thereof is void. [Citing cases] If such powers cannot be delegated, they surely cannot be bargained or contracted away; and certainly not by any administrative or executive officers who cannot have any legislative powers. Although executive and administrative officers may be vested with a certain amount of discretion and may be authorized to act or make regulations in accordance with certain fixed standards, nevertheless the matter of making such

standards involves the exercise of legislative powers. Thus qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of law-making and cannot be the subject of bargaining or contract. Such bargaining could only be usurpation of legislative powers by executive officers; and, of course, no legislature could bind itself or its successor to make or continue any legislative act. * * *'

"We are in accord with the views above set forth. A proper exercise of the legislative function might well involve consultation and negotiation with spokesmen for public employees, but the ultimate responsibility rests with the legislative body and, under the record here presented, that responsibility cannot be contracted away. For a complete annotation on the question see 31 A.L.R. 2d 1142." 377 P.2d 550.

In Mugford v. Mayor and City Council of Baltimore, 185 Md. 266, 44 A.2d 745, 747, 162 A.L.R. 1101, 1104 (1945), the court said:

" * * * To the extent that * * * [hours, wages, working conditions] are covered by the provisions of the City Charter, creating a budgetary system and a civil service, those provisions of law are controlling. To the extent that they are left to the discretion of any City department or agency, the City authorities cannot delegate or abdicate their continuing discretion. Any exercise of such discretion by the establishment of hours, wages or working conditions is at all times subject to change or revocation in the exercise of the same discretion." 44 A.2d 747, 162 A.L.R. 1104.