591 P.2d 122

The WASHINGTON WATER
POWER CO., Appellant,

v.

KOOTENAI ENVIRONMENTAL ALLI-
ANCE, and Idaho Public Utilities
Commission, Respondents.

No. 12509.

Supreme Court of Idaho.

Feb. 21, 1979.

876

Paul D. McCabe, Coeur d'Alene, Jerry K. Boyd of Paine, Lowe, Coffin, Herman & O'Kelly, Spokane, Wash., for appellant.

Wayne L. Kidwell, Atty. Gen., Michael S. Gilmore, Deputy Atty. Gen., Boise, Scott W. Reed, Coeur d'Alene, for respondents.

SHEPARD, Chief Justice.

This is an appeal from orders of the Idaho Public Utilities Commission prohibiting Washington Water Power Company from engaging in political advocacy. We set aside the orders of the Commission.

In March and May of 1975, Washington Water Power (WWP) published documents entitled the "Family Gazette" which were mailed to customers of WWP in the same envelopes as contained bills for the utility services. The March issue contained an article by WWP President Satre urging construction of hydro-electric facilities on the Middle Snake River. The May issue contained another article by Satre urging support of the position of WWP on the same subject. During that time the Hells Canyon National Recreation Bill prohibiting further hydro-electric development on the remaining free flowing stretch of the Snake River was pending before the United States Congress. It was subsequently enacted and signed by the President.

The Kootenai Environmental Alliance (KEA) filed its complaint with the Commission alleging that WWP had mailed with its utility bills addressed to Idaho customers a "biased and misleading" statement urging construction of hydro-electric dams on the Middle Snake River.

WWP moved to dismiss that complaint contending (1) the complaint failed to state a claim under I.C. § 61–612; and (2) the Commission lacked jurisdiction over the subject matter of the complaint. On July 17, 1975, the Commission heard oral argument regarding WWP's motion and on October 8, 1975, the Commission issued Order No. 12171 denying WWP's motion. On December 11, 1975, a hearing was held on the KEA complaint. KEA called four witnesses to testify, one of whom was a representative of the Sierra Club, who stated that in his opinion the issues dealt with in the March and May issues were "political" and presented in a "unbalanced" manner. The three remaining witnesses were customers of WWP and objected to the receipt of the

Gazette issues. WWP called no witnesses to testify.

Thereafter the Commission issued Order No. 12711, which denied many of the requests of KEA, but did prohibit the use of WWP's mailing of "political" advocacy in its billing envelopes. That order, which is the subject of this appeal, provided in pertinent part:

IT IS FURTHER ORDERED that The Washington Water Power Company shall from the date of this Order, henceforth refrain from including political advocacy with any bill for services or commodities furnished to any of its Idaho customers. For this purpose political advocacy is defined to mean any advertising or literature designed or intended (1) to promote the passage or defeat of a measure appearing on any local, statewide, or national ballot, (2) to promote or defeat any candidate for nomination or election to any public office, (3) to promote or defeat the appointment of any person to any administrative or executive position in federal, state, or local government, or (4) to promote or defeat any change in federal, state, or local legislation or regulations.

ANYONE having any interest in this Order shall have the right within twenty (20) days after the service date of this Order to apply for a rehearing in regard to any matter determined herein.

WWP filed a petition for rehearing of Order No. 12711, asserting:

1. The Complaint failed to state a claim under Idaho Code § 61–612; and WWP's Motion to Dismiss should have been granted.

2. This Commission did not have jurisdiction over the subject matter of the complaint under the laws of the State of Idaho; and the appellant's Motion to Dismiss should have been granted.

3. Order No. 12711 violates the constitutional rights of the appellant WWP under the United States Constitution and the Idaho Constitution.

4. Order No. 12711 constitutes a rule making procedure without compliance with the laws of the State of Idaho and is, therefore, invalid.

Thereafter the Commission issued Order No. 12877, wherein it concluded that Order No. 12171 constituted a final determination of the motion to dismiss, that the Commission had jurisdiction over the matter, that KEA had standing to file the complaint, and concluded that WWP had failed to petition for rehearing from Order No. 12171 within the 20-day period as required by I.C. § 61–626, and Rule 11.1 of the Rules of the Idaho Public Utilities Commission. As to the remaining issues raised by WWP's petition, a rehearing was granted.

On March 2, 1977, a rehearing was held before the Commission as to whether Order No. 12711 violated the constitutional rights of WWP and whether that order constituted a rulemaking procedure beyond the authority of the Commission and, therefore, without compliance with the laws of the State of Idaho. After argument by attorneys, WWP offered testimony wherein six witnesses who were customers of WWP expressed their desire to receive the type of information specifically prohibited by the Commission orders. The two remaining witnesses were employees of WWP. One testified that the additional cost of mailing the Gazette separate from the utility bills would cost an additional $20,000 to $36,000. The remaining witness testified that the Commission orders would have the effect of prohibiting any discussion of any substantive issues by WWP through the medium of the billing procedure. Testimony was also offered by WWP concerning the truthfulness of the Gazette articles, but was rejected by the Commission. On April 4, 1977, the Commission issued Order No. 13071, which affirmed Order No. 12711, and from these orders WWP has appealed.

We note initially that in Order No. 12711 the Commission recognized that the incremental costs relating to the inclusion of the Gazette in the utility billing procedure were actually paid by WWP's shareholders. No finding was made nor evidently could be made that the utility customers bore any of those costs. The Commission did note, how-

ever, that the cost of mailing the monthly utility bills is a utility operating expense and it stated that "when bill stuffers are enclosed in the same envelope, the Washington Water Power Company and its shareholders derive the economic 'benefit' of utilizing the company's address list and the mechanized billing system. In addition, they do not have to spend an equivalent amount of postage." The Commission also suggested that there must be an incremental overhead expense charged to the ratepayer in processing the political material in the envelopes. However, the Commission made no attempt to determine what, if any, that overhead expense might be.

WWP asserts that the Commission inappropriately ordered a prohibition of the sending of "political advocacy" in its monthly utility billing procedure. WWP argues that the KEA complaint did not state a claim under I.C. § 61–612, that the Commission did not have jurisdiction over the subject matter of the complaint, that the Commission orders are an unconstitutional infringement on WWP's right to free speech, that the Commission orders are unconstitutionally void for vagueness, that the Commission orders deny WWP equal protection of the law, and that Order No. 12711 is invalid for failure to comply with the Administrative Procedure Act of the State of Idaho.

Although we discuss hereafter the claim of unconstitutional infringement upon free speech, we essentially conclude that the Idaho Public Utilities Commission lacks authority to prohibit a public utility from mailing "political advocacy" as defined in Order No. 12711, together with customers' utility bills under the circumstances existing here, and the utility Commission was, therefore, without jurisdiction to issue the orders which are the subject of this appeal.

We first discuss the Commission's contention that WWP is precluded from raising the issue on appeal. It will be recalled that in Commission Order No. 12171, the Commission ruled adversely to WWP's contentions regarding the jurisdiction of the Commission and the standing of KEA. There-

after a hearing was held on the merits, following which the Commission issued Order No. 12711. After the issuance of Order No. 12711, a rehearing was sought and the Commission issued Order No. 12877, holding that Order No. 12171 constituted a final determination of the issues of jurisdiction and standing and that the petition for rehearing on those issues was without merit. The Commission here contends that since WWP did not petition for rehearing following the issuance of Order No. 12171, it has not complied with I.C. § 61–626, and with Rule 11.1 of the Rules of the Public Utilities Commission, and therefore the appeal of WWP on the issues of the jurisdiction of the Commission and the standing of KEA is now barred.

In opposition to the Commission's argument, WWP argues that Order No. 12171 was only an interlocutory order from which no application for rehearing or an appeal to this Court was either required or permissible. WWP argues that the language of Order No. 12171 is illustrative of its interlocutory nature since the subsequent orders of the Commission contain statements indicating the period for filing a petition for rehearing, whereas Order No. 12171 contains no such language.

 Following the issuance of Order No. 12171 on October 8, 1975, a hearing was held before the Commission on December 11, 1975, wherein WWP again raised the issue of jurisdiction and standing together with other arguments. Following that hearing, the Commission issued Order No. 12711, again concluding it had jurisdiction and that KEA had standing. However, the Commission gave no indication that such conclusion was based on WWP's failure to apply for a rehearing from Order No. 12171. Rather, it is indicated that the Commission made an independent redetermination of those issues of jurisdiction and standing. Indeed the Commission concluded "anyone having any interest in this Order shall have the right within twenty (20) days after the service date of this Order to apply for a rehearing *in regard to any matter determined herein.*" (Emphasis supplied.) Fol-

lowing the issuance of that order (12711), WWP applied for rehearing and the Commission issued Order No. 12877, wherein it was first stated the Commission's position regarding the failure to petition for a rehearing from Order No. 12171. [Although the Commission contends that such petition was not timely, it nevertheless proceeded to consider and rule upon the issues of jurisdiction and KEA standing in Order No. 12711, and hence we find WWP is not prohibited from bringing this appeal on the basis of the timeliness of its petition for rehearing.] The purpose of an application for rehearing is to afford an opportunity to the parties to bring to the attention of the Commission in an orderly manner any question theretofore determined in the matter and thereby afford the Commission an opportunity to rectify any mistake made by it before presenting the same to this Court. *Idaho Underground Water Users Ass'n v. Idaho Power Co.*, 89 Idaho 147, 404 P.2d 859 (1965); *Consumers Co. v. Public Utilities Comm'n*, 40 Idaho 772, 236 P. 732 (1925). We conclude from the record here that although the Commission reviewed the issues of jurisdiction and standing and ruled thereon in Order No. 12171, it nevertheless intended to and did fully consider, review and rule upon those same issues of jurisdiction and standing in Order No. 12711. From that order, No. 12711, WWP properly applied for rehearing and has perfected this appeal. Hence, WWP is entitled to be heard here on the issues of the jurisdiction of the Commission and the standing of KEA.

We turn now to the merits of WWP's appeal, wherein it is asserted that the orders of the Commission should be set aside because the Commission lacked jurisdiction over the subject matter of the KEA complaint. We consider first whether the Commission has authority to prohibit a public utility, under the circumstances here, from mailing along with its customer utility bills the material prohibited by the Commission orders.

The Idaho Public Utilities Commission has no authority other than that given to it by the legislature. It exercises a limited jurisdiction and nothing is presumed in favor of its jurisdiction. *United States v. Utah Power & Light Co.*, 98 Idaho 665, 570 P.2d 1353 (1977); *Lemhi Tel. Co. v. Mountain States Tel. & Tel. Co.*, 98 Idaho 692, 571 P.2d 753 (1977); *Arrow Transp. Co. v. Idaho Public Utilities Comm'n*, 85 Idaho 307, 379 P.2d 422 (1963). As a general rule, administrative authorities are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the statutes reposing power in them and they cannot confer it upon themselves, although they may determine whether they have it. If the provisions of the statutes are not met and compliance is not had with the statutes, no jurisdiction exists. *Arrow Transp. Co. v. Idaho Public Utilities Comm'n, supra.* However, while jurisdiction of the Commission is to be strictly construed once jurisdiction is clear the Commission is allowed all power necessary to effectuate its purpose. "Every power expressly granted, or fairly to be implied from the language used, where necessary to enable the Commission to exercise the powers expressly granted should be afforded." *United States v. Utah Power & Light Co., supra*, 98 Idaho at 667, 570 P.2d at 1355, *quoting* 64 Am.Jur.2d, Public Utilities, § 232 (1972).

The Commission contends that the prohibition contained in its orders is within its power to regulate ratemaking and billing practices. This Court has long recognized the delegation of ratemaking authority to the Commission. *Idaho Power & Light Co. v. Blomquist*, 26 Idaho 222, 141 P. 1083 (1914). Our statutes specifically delegate rate fixing authority to the Commission. I.C. § 61–502 provides:

I.C. § 61–502. Determination of rates. —Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates, fares, tolls, rentals, charges or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursions or commuta-

tion tickets, or that the rules, regulations, practices, or contracts or any of them, affecting such rates, fares, tolls, rentals, charges or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices or contracts to be thereafter observed and in force and shall fix the same by order as hereinafter provided, and shall, under such rules and regulations as the commission may prescribe, fix the reasonable maximum rates to be charged for water by any public utility coming within the provisions of this act relating to the sale of water.

I.C. § 61–503 provides:

I.C. § 61–503. Power to investigate and fix rates and regulations.—The commission shall have power, upon a hearing, had upon its own motion or upon complaint, to investigate a single rate, fare, toll, rental, charge, classification, rule, regulation, contract or practice, or any number thereof, or the entire schedule or schedules of rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices, or any thereof, of any public utility, and to establish new rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices or schedule or schedules in lieu thereof.

The statutes reflect the legislative grant of authority to the Commission to deal broadly with existing and future rates, rates schedules and contracts affecting rates. *See also* I.C. § 61–622. *See United States v. Utah Power & Light Co., supra.*

As a portion of its statutorily authorized ratemaking function, the Commission sets rates which allow the utility the capacity to earn a fair return upon its investment. In establishment of a rate base, operating expenses of the utility must, among other matters, be determined. If improper items have been included in operating expenses or if operating expenses have been overstated, actual net earnings would be greater and the rate of return thus proportionately enlarged. *Boise Water Corp. v. Idaho Public Utilities Comm'n,* 97 Idaho 832, 555 P.2d 163 (1976). Hence, the Commission has the authority to determine the inclusion as an operating expense in a utility's rate base either in part or in whole "costs" incurred by a utility. Such is only another way of stating the question—should the ratepayers bear the expense of certain of the activities of the utility. Here the question is *not* if the Commission had authority to disallow as an operating expense costs incurred in mailing the prohibited "political material." Such would have been appropriate as a part of the Commission's ratemaking function. However, here the Commission found that the costs were paid by WWP and its stockholders and that those costs were not claimed as an operating expense. Nevertheless, the Commission contends that its actions are authorized as a part of its ratemaking function since WWP and its stockholders derive an economic "benefit" in that they are not required to send the Gazette in a separate mailing independent from the utility billing process. In such argument the Commission abandons the traditional ratemaking considerations of whether the ratepayers are being charged an economic burden which they should not be required to pay as a part of their utility rates.

The determination of what business expenses are to be incurred by a public utility in its operations is ordinarily a matter left within the discretion of the utility's management. An inquiry into such expenses by the Commission will normally only be extended into whether such expenditures may be classified as "operating expenses" and thus passed on to the utility ratepayers. *See,* Annot., 83 A.L.R.3d 963 (1978). We hold that the Commission's order is not sufficiently within the ratemaking authority granted to it by the legislature, and hence the prohibition contained in the Commission's order must be set aside. We are not informed of any previous action

in which the Commission has utilized the "benefit" analysis of Order No. 12711. Such "benefit" analysis is urged despite the fact that no increase in costs to the ratepayers has resulted from the inclusion of the Gazette with the billing material. Insofar as the record here discloses, the operating expense of mailing the utility bills remains the same regardless of whether the Gazettes are included. We also note that the Commission's order does not prohibit the sending of the Gazette *per se,* but rather prohibits the sending of "political advocacy" as defined in that order. Thus, any "benefit" which might be gained by WWP by sending out the Gazette continues to inure to WWP so long as the Gazette does not contain "political advocacy."

■ The Commission additionally contends that it has the authority upon its own motion to investigate a public utility's "practices" and thereafter establish new ones under I.C. §§ 61–502 and 61–503. We hold that the "practices" as the term is used in those statutes are those "practices" which do or may affect the rates charged or the services sought or rendered which are within the Commission's ratemaking functions. The statutes at issue here contain both specific and general terms. In determining legislative intent, we apply the doctrine of *ejusdem generis,* which states that where specific words of description are followed by general terms, the latter will be regarded as referring to persons or things of a like class of those particularly described. Annot.: *Supreme Court's Application of the Rule of Ejusdem Generis and Noscitur A Sociis,* 46 L.Ed.2d 879; 2A Sands, Statutes and Statutory Construction, § 47.-17 (4th ed. 1973). Thus, we hold that the legislature intended to limit the Commission's authority under I.C. § 61–502 and § 61–503 to those practices which affect the rates, fares, tolls, rentals, charges or classifications of the public utility. We find under the statutes now in existence no legislative intent to extend the ratemaking authority of the Commission to the area of regulating political statements in the absence of a finding that such action by the utilities increases expenses to be borne by the ratepayers.

■ Relevant to our analysis of the authority of the Commission is the difficult question raised by its orders as to whether the order is unconstitutional to the extent such order infringes upon freedom of speech. Clearly, the Commission's order is a limitation of WWP's freedom of speech. If we found it necessary to decide that issue, this Court would be required to carefully balance the competing interests involved. As held in *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), a prohibition on the "exposition of ideas" by a corporation must survive an exacting scrutiny. If a prohibition is directed at speech itself and the speech is intimately related to the process of governing, "the State may prevail only upon showing a subordinating interest which is *compelling." Bates v. City of Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960) (Emphasis supplied); see *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945), "and the burden is on the government to show the existence of such an interest." *Elrod v. Burns,* 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). The state must employ means "closely drawn to avoid unnecessary abridgment . . ." *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976); *see, NAACP v. Button, supra; Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

■ Whether the state legislature may constitutionally curtail the freedom of speech of a public utility, such as Washington Water Power, is not an issue herein unless we first conclude that the Commission has the requisite legislative authority. We will construe narrowly those powers delegated by the legislature to the Commission where it is contended that a fundamental right, such as freedom of speech, is to be thereby curtailed or diluted. *See generally,*

*Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).

■ The Commission argues that it is vested with general regulatory authority over public utilities under I.C. § 61–501, which provides, "The public utilities commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in the state to do all things necessary to carry out the spirit and intent of the provisions of this act." The Commission contends that the statutory language of I.C. § 61–501, when read in the abstract, arguably could be construed as granting authority to the Commission to regulate public utilities comparable to the police power of the legislature. Neither the Commission nor KEA has cited to the Court any authority wherein this Court has found the authority of the Commission based solely on I.C. § 61–501. That statute is implemented by additional statutory provisions which specifically detail the authority of the Commission and the activities subject to its regulation. This Court historically has looked to the more specific provisions contained in I.C. §§ 61–502—61–537, to find the legislative grant of authority to the Commission.

There is no question that much of the work of the Commission, particularly in the area of ratemaking, requires expertise, technical skill and constant attention. As early as *Idaho Power & Light Co., v. Blomquist, supra,* this Court has recognized the difficulty of having the legislature regulate intelligently the rates, service and other matters which need regulation in connection with utility corporations. Such was held to be a strong argument for the delegation of the legislative authority to a commission under statutes established by the legislature.

The subject matter of the Commission's order at issue here does not deal with the subject matter traditionally regulated by public utility commissions and does not fall into a category of regulation which requires the technical expertise of a commission as contrasted with a legislature. The determination of whether the customers of WWP need to be protected from "political advoca-

cy" is equally, if not more, within the expertise of the Idaho legislature as contrasted with the Commission. In *State v. Kellogg,* 98 Idaho 541, 568 P.2d 514 (1977), the Court, in deciding the constitutionality of delegation of decision making authority, stated:

It is clear that the legislative power of the state is by our Constitution vested in the Senate and House of Representatives and it is a fundamental principal of representative government that, except as authorized by organic law, the legislative department cannot delegate any of its power to make laws to any other body or authority.

At 543, *quoting Boise Redevelopment Agency v. Yick Kong Corp.,* 94 Idaho 876, 499 P.2d 575 (1972); *Local Union 283 International Brotherhood of Electrical Workers v. Robison,* 91 Idaho 445, 423 P.2d 999 (1967); *State v. Purcell,* 39 Idaho 642, 228 P. 796 (1924).

In sum, we do not accept the argument of the Commission that their authority in the present circumstances should be so broadly construed as beyond the traditional and orthodox ratemaking function. If the legislative branch desires the Public Utilities Commission to have such authority, it must be provided by precise language. Such a clearly manifested specific grant of authority to the Commission embracing such volatile areas of freedom of speech would, of course, be subject to attack on constitutional grounds and such a decision is best left for a more appropriate occasion.

The orders of the Commission are set aside.

McFADDEN, DONALDSON and BISTLINE, JJ., and SCOGGIN, J. Pro Tem., concur.