685 P.2d 276

**UTAH POWER & LIGHT COMPANY, Appellant,**

v.

**IDAHO PUBLIC UTILITIES COMMISSION, Idaho Irrigation Pumpers Assn., Inc., Beker Industries Corp., and Monsanto Company, Respondents.**

**In the Matter of the MOTION OF UTAH POWER & LIGHT CO. TO ALTER AND AMEND ORDER NO. 13448, CASE NO. U–1009–84.**

**No. 14433.**

Supreme Court of Idaho.

June 20, 1984.

48

W.F. Merrill of Merrill & Merrill, Poca-
tello, Sidney G. Baucom, Salt Lake City,
Utah, for appellant.

David H. Leroy, Atty. Gen., Michael S.
Gilmore, Deputy Atty. Gen., Boise, Racine,
Huntley, Olson, Nye & Cooper, Pocatello,
Dan L. Poole, of Elam, Burke, Evans, Boyd
& Koontz, Boise, for respondents.

BISTLINE, Justice.

The basic issue presented today is wheth-
er the Idaho Public Utilities Commission
(PUC) has the authority to grant a public
utility a surcharge to recover past losses
caused by an invalid PUC order set aside
by this Court on appeal.

On December 29, 1976, Utah Power &
Light Company (UP & L) applied to the
PUC to increase its rates and charges for
its customers in the State of Idaho by
$12,536,000. UP & L requested that the
proposed rates and charges become effec-
tive on January 31, 1977. The proposed
rates were suspended by the PUC pursuant
to I.C. § 61–622.[1]

On September 29, 1977, pursuant to Or-
der No. 13448, the PUC authorized UP & L
to increase its rates and charges by $3,371,-
408 annually instead of by the $12,536,000
requested by UP & L. UP & L timely
petitioned for rehearing from this order.
On November 11, 1977, the PUC issued
Order No. 13550 which denied in part and

---

1. Pursuant to I.C. § 61–622 a public utility may
raise its rates, but those rates are automatically
suspended until thirty days have expired or the
PUC holds a hearing on the question, whichever
time period is shorter. If no hearing is held by
the end of thirty days, the public utility's pro-
posed rates then become effective subject to
potential subsequent modification by the PUC

pursuant to I.C. § 61–502, unless the PUC, pur-
suant to the terms of the statute, extends the
period of suspension. *Citizens Utility Co. v. Ida-
ho Public Utilities Commission,* 99 Idaho 164,
579 P.2d 110 (1978). A court order staying a
PUC order therefore permits the public utility's
rates as proposed to go into effect.

granted in part UP & L's petition for rehearing. UP & L timely appealed to this Court from Order No. 13550 denying in part its petition for rehearing.

In the meantime, a rehearing was held. On March 16, 1978, the PUC determined that it had erred in one aspect of its calculation of UP & L's revenue requirement and that Order No. 13448 of September 29, 1977, should have granted an increase of $3,647,900 to UP & L. The PUC then issued Order No. 13739 which superseded Order No. 13448 and authorized UP & L to file higher tariffs based upon its correction of the earlier order.

UP & L's appeal from Order No. 13448 came at issue in December, 1978. This Court issued an opinion in the appeal, *Utah Power & Light Company v. Idaho Public Utilities Commission*, 102 Idaho 282, 629 P.2d 678 (1981) (*UP & L I*), in May of 1981. In *UP & L I*, the Court set aside PUC Order No. 13448 because it determined that the PUC erred by failing to make adjustments to the 1976 test year data for certain "known and measurable changes," which error resulted in the establishment of an artificially low rate base. *Id.* at 284, 629 P.2d at 680.

On July 27, 1981, UP & L filed a petition for hearing with the PUC requesting it to modify Order No. 13448 set aside by this Court in *UP & L I* and to recover UP & L's shortfall of operating revenue resulting from that order. By testimony and exhibits submitted, UP & L quantified the amount of additional revenue which it should have recovered during Order No. 13448's period of effectiveness from September 29, 1977, to March 21, 1978, as $6,068,000. It requested that it be allowed to recover this deficiency by a surcharge to its Idaho customers imposed over a 12-month period.

Upon receiving UP & L's petition, the PUC raised the question of its authority to impose a surcharge of the kind requested by UP & L and set oral argument in the matter. After argument, the PUC issued an informal oral ruling from the bench and declined to hold any further hearings on UP & L's petition.

 The PUC summarized the Public Utility Law thus in denying UP & L's request for a surcharge:

"[W]e construe the Public Utility Law as follows: When any party, be it utility, ratepayer or the State of Idaho, appeals a rate setting Order of the Idaho Public Utilities Commission to the Supreme Court of Idaho, but does not stay the effectiveness of the Order by posting bond under the terms of the Public Utility Law, then the rates and charges set forth by that Order are final in all respects as service is provided and consumed so long as the Order continues in effect. If the Order is later set aside by the Supreme Court of Idaho, no rates and charges previously collected may be adjusted as a result; similarly, no rates and charges later established by the Commission may be adjusted from what they otherwise would have been to take into account what the appealed Order would have been before it was set aside had it, during the time it was in effect, conformed to or been altered or amended to meet the objections of the opinion of the Supreme Court of Idaho. The statutes governing rehearing, appeal and stay of our orders, and the general prohibitions against setting rates based upon previous periods of unreasonably high or unreasonably low rates, admit no other construction. We are a regulatory Commission, not a court of law, and have no authority to award damages except as given to us by statute." (Footnote omitted.)

We agree with the PUC's interpretation of the Public Utilities Law and therefore affirm its decision in this case.

## I.

UP & L contends that the stay and bond procedures provided by the Public Utilities

Laws, I.C. §§ 61–633 through 61–638,[2] do not provide the exclusive means for obtaining monetary relief from PUC orders denying public utilities' requested rate increases. UP & L argues that these procedures are not always available to a petitioning party and so should not be construed as providing the exclusive means for obtaining monetary relief.

## A. EXCLUSIVE REMEDY

UP & L contends that the granting of a stay by either the district court or the Supreme Court pursuant to I.C. §§ 61–633 and –636 is discretionary with the courts. UP & L argues that under the PUC's interpretation of the stay and bond provisions an appeal can only be an effective remedy *if* the reviewing court *chooses* to exercise its discretion in granting a stay. UP & L argues that to make the effectiveness of an

appeal hinge upon the granting of a discretionary stay conflicts with its basic due process rights and with I.C. § 61–627 which grants any aggrieved party a direct right of appeal to the Supreme Court.

In *Joy v. Winstead,* 70 Idaho 232, 238, 215 P.2d 291, 293 (1950), this Court, in addressing the question of a district court's jurisdiction to stay PUC orders, first observed "that due process requires that courts stay an order of a commission, i.e., regulatory body, if enforcement thereof may result in confiscation and irreparable loss, until the final adjudication, through appropriate channels, of the correctness of the order." The Court followed with the declaration that "pendente lite, the Company must be protected against confiscation, if irreparable, and to insure and accomplish

2. I.C. § 61–633 provides that:
"No court of this state shall enjoin or restrain the enforcement of any order of the commission or stay the operation thereof, unless the applicant for such writ shall give three (3) days' notice of said application to all adverse parties and to the commission.... [I]f an injunction, restraining order or other order suspends or stays the order of the commission as issued, such order shall contain a specific finding based upon the evidence submitted to the court and identified by reference thereto that *great and irreparable damage* would result to the petitioner and specifying the nature of the damage." (Emphasis added.)
I.C. § 61–634 provides that: "In case the order or decision of the commission is stayed or suspended, the order shall not become effective until a suspending bond has been executed ...."
I.C. § 61–635 provides that: "The pendency of an appeal shall not of itself stay or suspend the operation of the order of the commission, but during the pendency of such appeal, the Supreme Court may stay or suspend, in whole or in part, the operation of the commission's order."
I.C. § 61–636 provides that:
"No order so staying or suspending an order or decision of the commission shall be made by the court otherwise than upon a three (3) days' notice and after hearing, and if the order or decision of the commission is suspended, the order suspending the same shall contain a specific finding based upon the evidence submitted to the court and identified by reference thereto, that *great or irreparable damage* would otherwise result to the petitioner and specifying the nature of the damage." (Emphasis added.)
I.C. § 61–637 provides that:
"In case the order or decision of the commission is stayed or suspended, the order of the

court shall not become effective until a suspending bond shall first have been executed and filed with, and approved by the commission (or approved on review by the court), payable to the people of the state of Idaho, and sufficient in amount and security to insure the prompt payment, by the party petitioning for the review, of all damages caused by the delay in the enforcement of the order or decision of the commission ... in case said order or decision is sustained."
I.C. § 61–638 provides that:
"In case the court stays or suspends any order or decision lowering any rate, fare, toll, rental, charge or classification, the commission, upon the execution and approval of said suspending bond, shall forthwith require the public utility affected ... to keep such accounts verified by oath, as may in the judgment of the commission suffice to show the amounts being charged or received by such public utility, pending the review, in excess of the charges allowed by the order or decision of the commission, together with the names and addresses of the corporations or persons to whom overcharges will be refundable in case the charges made by the public utility, pending the review, be not sustained by the court.... Upon the final decision by the court, all moneys which the public utility may have collected, pending the appeal in excess of those authorized by such final decision, *together with interest in case the court ordered the deposit of such moneys in a bank or trust company, shall be promptly paid to the corporations or persons entitled thereto,* in such manner and through such methods of distribution as may be prescribed by the commission." (Emphasis added.)

this Courts may and must, if the Commission does not, stay enforcement of a confiscatory rate, correspondingly protecting the consumer." 70 Idaho at 238, 215 P.2d 291. Our reading of this passage, with the following correction of the obvious clerical error in capitalization and another in punctuation, is that "to insure and accomplish a company's protection against confiscation, courts may, and must if the Commission does not, enter appropriate stay orders."

Four years later this Court in *Mountain States Tel. & Tel. Co. v. Jones,* 75 Idaho 78, 267 P.2d 634 (1954), in commenting on *Joy v. Winstead,* observed that it had not therein in any way outlined the procedure or what was necessary to be shown in order to justify a stay order. 75 Idaho at 82, 267 P.2d at 636. After citing *Joy v. Winstead* for the proposition that a proceeding to obtain a stay "is not a rate hearing, but an extraordinary, emergency proceeding ... pendente lite for the sole and only purpose of *considering temporary relief against probable confiscation,*" 75 Idaho at 83, 267 P.2d at 637, the Court concluded that the issuance of a stay laid in the "sound, considered judicial discretion of the trial court *after a full hearing on the single issue of probable confiscation.*" [3] Giving the guidance which was not contained in *Joy v. Winstead,* the Court quoted from *Public Service Commission v. Indianapolis Rys,* 225 Ind. 30, 72 N.E.2d 434, 439 (1947), for the rule that:

" ' "All that is necessary is that plaintiff show that it is prima facie entitled to an injunction; that the injury to plaintiff will be certain and irreparable if the application for an interlocutory injunction be denied, and, if the injunction be grant-

ed, that the injury to the opposing party, even if the final decree be in its favor, may be adequately indemnified by bond." ' "

75 Idaho at 84, 267 P.2d at 637.

We read the language of the *Mountain States* case as modifying the language of *Joy v. Winstead* only to the extent of requiring a prima facie showing to establish probable confiscation pendente lite.

■ UP & L additionally argues that the remedy provided by the stay and bond procedures should not be thought *exclusive* because the remedy is not available in cases in which there has been no showing of "irreparable damage to the petitioning party." Irreparable damage is that injury which cannot be adequately compensated for monetarily. *See* Black's Law Dictionary 707 (rev. 5th ed. 1979). In response to the contention that the issuance of a stay was not necessary to protect the utility pending appeal from a confiscatory rate order and so was discretionary with the court, the Court, in *Joy v. Winstead,* held that:

"[T]o await appeal before a stay order could be issued by this Court would be inadequate, is apparent for these reasons: First, the losses sustained during the time from May 14, 1948, when increased rates were asked and until appeal to this Court, not yet taken and now unavailable until the rehearing before the Commission is concluded, because the rehearing must be completed (Sec. 61–627, I.C.) before an appeal will lie and we have jurisdiction to grant a stay, *could not be recouped by an increased rate to*

**3.** The problem in the *Mountain States* case was the district court's indication in a summary disposition that no additional evidence would be received or considered, which this Court saw as "unduly and prejudicially restrictive." 75 Idaho at 83, 267 P.2d at 637. On rehearing, four justices agreed that:

"The action of the trial court herein was reversed as improvident, not because the facts before him were insufficient to justify the injunction permitting the charging of the increased rates to avoid confiscation, which was not passed on, but because opportunity was

not given the State or other interested parties to introduce evidence contrary to the showing made by the plaintiff,"
75 Idaho at 87, 267 P.2d at 639,
and also declared:
"The underlying reason for the issuance of this injunction, i.e., to prevent possible confiscation, still persists and the only pertinent authority cited, *United States v. Morgan,* 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211, supra, supports the continuation of the injunction as ordered pendente lite."
75 Idaho at 88, 267 P.2d at 646.

*cover them, so such loss would be permanent."*

70 Idaho at 240–41, 215 P.2d at 295 (emphasis added).

Thus, a finding that irreparable damage resulting from probable confiscation must be made as the primary requisite for the issuance of a stay.

UP & L urges a construction of the Public Utilities Law that would make the statutory standard of "great and irreparable damage" meaningless and superfluous. If a utility were to be held entitled to a surcharge or other monetary relief whenever a PUC order is set aside upon appeal, the failure to stay or enjoin enforcement of a PUC order could never subject the utility to the "great and irreparable damage" envisioned by the legislature in enacting I.C. §§ 61–633 and –636 (set out *supra* in n. 2).

### B. PUBLIC UTILITIES LAW READ AS A WHOLE

■ UP & L contends that because there is no express language in the Public Utilities Law specifically declaring that the stay and bond procedures are the manner by which relief may be obtained from allegedly invalid PUC orders, such should not be considered as exclusive to other means—in this case the allowance of a surcharge. Although there is no express language, it is readily seen that the Public Utilities Law itself neither provides nor suggests any alternatives. It has been firmly established that the PUC has no authority not given it by statute.

"The Idaho Public Utilities Commission has no authority other than that given to it by the legislature. It exercises a limit-

ed jurisdiction and nothing is presumed in favor of its jurisdiction. *United States v. Utah Power & Light Co.,* 98 Idaho 665, 570 P.2d 1353 (1977); *Lemhi Tel. Co. v. Mountain States Tel. & Tel. Co.,* 98 Idaho 692, 571 P.2d 753 (1977); *Arrow Transp. Co. v. Idaho Public Utilities Comm'n,* 85 Idaho 307, 379 P.2d 422 (1963). As a general rule, administrative authorities are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the statutes reposing power in them and they cannot confer it upon themselves, although they may determine whether they have it. If the provisions of the statutes are not met and compliance is not had with the statutes, no jurisdiction exists."

*Washington Water Power Co. v. Kootenai Environmental Alliance,* 99 Idaho 875, 879, 591 P.2d 122, 126 (1979).

I.C. § 61–502 provides that:

"Whenever the commission ... shall find that the rates ... are unjust, unreasonable, discriminatory or preferential, ... or that such rates ... are insufficient, the commission shall determine the just, reasonable or sufficient rates ... *to be thereafter observed* ...." (Emphasis added.)

This section provides only prospective relief. It does not give the PUC authority to prescribe surcharges or reductions to otherwise reasonable rates in order to make up past revenue shortfalls due to confiscatory rates.

Although there is no statutory provision directly on point, an examination of I.C. §§ 61–502, –622,[4] –623 [5] provides the back-

---

4. I.C. § 61–622 provides that:

"No public utility shall raise any rate ... under any circumstances whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justified. The commission shall have power ... to enter upon a hearing concerning the propriety of such rate, ... and *pending the hearing and decision thereon, such rate ... shall not go into effect* .... On such hearing, the commission shall establish the rates ... which it shall find to be just and reasonable." (Emphasis added.)

This section provides that when the PUC grants a rate increase, the rate increase shall not be retroactive to the time of application, even if it can be shown that it would have been just and reasonable to grant a rate increase at the time of the application.

5. I.C. § 61–623 governs applications for rate decreases and parallels § 62–622 governing rate increases. Under this section, when a utility applies for a rate decrease, the PUC decreases rates prospectively only: "[P]ending the hearing and decision thereon, such rate ... shall not go into effect .... On such hearing the commis-

ground against which the PUC's authority must be examined. A common thread weaves through these provisions: rates set by order are final *unless stayed* and are determinative of all rights of the parties as long as they remain in effect without regard to whether they are later altered or amended on rehearing or altered or amended after being set aside on appeal. These provisions provide that rates are only to have *prospective* effect. A holding by this Court that the PUC has authority to grant utilities surcharges to make up past deficits would conflict with the spirit, if not with the express terms, of these provisions.

The potential havoc that would be wreaked in this intricate statutory scheme is evidenced by the result which would be reached were this Court to permit surcharges. For the purpose of this argument, the time period here at issue when Order No. 13448 was in effect, from September 29, 1977, to March 16, 1978, will be divided into two categories: that period before the PUC granted in part and denied in part UP & L's motion for rehearing by Order No. 13550, and that period after Order No. 13550. Under the interpretation of the Public Utilities Law urged by UP & L, there would result as to the first time period differing rules of law for orders set aside on appeal and those set aside by the PUC on its own motion or on motion of a party. UP & L argues that the rates collected during both periods should be the basis of a surcharge because the order of September 29, 1977, was set aside on appeal. However, I.C. § 61–626 [6] specifically provides that (1) a motion for rehearing

does not operate to stay enforcement of the preceding order; and (2) an order following rehearing cannot be retroactively applied. Under I.C. § 61–626, there is no basis for a surcharge upon modification of rates by the PUC upon its own order following rehearing. If we were to follow UP & L's interpretation of the law, no surcharge would be permissible on the PUC's own amendment of rates but a surcharge would be permissible when the original order was set aside on appeal. Absent more persuasive reasoning than is here presented, we will not read into the Public Utilities Law a double standard for obtaining relief, one which would give broader relief to a utility on appeal to this Court than would be permitted on rehearing by the PUC itself.

## C. ORDERS SET ASIDE ON APPEAL

UP & L argues that I.C. §§ 61–624 and 61–629 give the PUC the authority to grant monetary relief to a utility when a PUC order is set aside by this Court on appeal. At the time relevant to this appeal I.C. § 61–629 provided in part:

"Upon the hearing the Supreme Court shall enter judgment, either affirming or setting aside the order of the commission. In case the order of the commission is set aside the commission, upon its own motion or upon motion of any of the parties, *may alter or amend the order appealed from to meet the objections of the court* in the manner prescribed in section 61–624." (Emphasis added.) [7]

---

sion shall establish the rates ... which it shall find just and reasonable."

**6.** I.C. § 61–626 provides in part that:
"An application for ... a rehearing shall not excuse any corporation, public utility or person from complying with or obeying any order ... or operate in any manner, to stay or postpone the enforcement thereof .... An order made after any such rehearing, abrogating or changing the original order, *shall have the same force and effect as an original order, and shall not affect any right or the enforcement of any right arising from or by virtue of the original order.*" (Emphasis added.)

**7.** I.C. § 61–629 was amended in 1981 to provide in part:
"Upon the hearing the Supreme Court shall enter judgment, either affirming or setting aside or setting aside in part the order of the commission. In case the order of the commission is set aside or set aside in part, the commission upon its own motion or upon motion of any of the parties, may alter or amend the order appealed from to meet the objections of the court in the manner prescribed in section 61–624, Idaho Code."
1981 Sess.Laws ch. 129, § 1, p. 217.
All references to I.C. § 61–629 in this opinion are to that statute as it was in effect prior to its amendment in 1981.

This provision permits the PUC to "alter or amend the order appealed from" but does not permit the PUC to alter or amend any other order, or to make any new order not within the purview of the Court's directions on remand. UP & L's petition, in addition to requesting that Order No. 13448, which had since been superseded by intervening PUC orders, be amended, also, in effect, requested the PUC to amend whatever rate order was then in effect in order to grant UP & L a surcharge. The relief requested by UP & L would not be the altering or amending of Order No. 13448 to meet the objections of the Court as set forth in *UP & L I, supra,* but would amount to the imposition of a surcharge which simply is not related to an amendment of Order No. 13448.

UP & L argues that I.C. § 61–629 would lose its meaning and effect if it were concluded that no additional monetary awards could be collected as a result of an altered or amended order. It argues that the only way the amendment of the PUC's order to increase a rate base and rate of return to meet the Supreme Court's objections thereto can have any real meaning or practical effect is by allowing the collection of the additional revenue which would have flowed to it had there been a proper Order No. 13448 in the first instance.

First, it must be noted that this Court in *UP & L I, supra,* did not order the PUC to alter or amend its order of September 29, 1977, nor did it order the PUC to grant UP & L a surcharge or other monetary relief. In fact, to do so was not within the range of our statutory prerogatives.[8] I.C. § 61–629 provided that "the Supreme Court shall enter judgment, *either affirming or setting aside* the order of the commission." The Court's direction to the PUC in *UP & L I* was that provided by statute: "The order of the Commission is set aside." 102 Idaho at 285, 629 P.2d at 681 (1981).

Second, it is not for this Court to imply a term in the statute allowing the PUC to grant a surcharge when the legislature has not so provided, and this is especially so where the legislature has provided a means for obtaining monetary relief, i.e., compliance with the statutory stay and bond procedures. UP & L will not be heard to complain to this Court that it has no adequate remedy when a procedure has been specifically provided to obtain relief with which the utility has made no endeavor to comply.[9]

---

8. In fact, such an order would have been highly unusual in light of representations made to this Court during oral argument of *UP & L I* by counsel for UP & L that:

 "JUSTICE BAKES: ... What, if anything, could be done—in your view—how then from the mechanic's purely point of view—how would any such remedies be actually interpreted or carried out in terms of dollars to Utah Power? Would there be anything more than a personal but nonmonetary victory on their part?

 "MR. MERRILL: Well, I think it would be considerably more than a—just a personal victory on their part. It would not as far as I can determine as a practical matter give one dollar more to Utah Power and Light because they have had two rate increases and tomorrow we start the final hearings on the third request for a rate increase since this one was granted. If it goes back, if this order is overturned and it goes back, obviously the only course open would be a surcharge. Mr. Seeds in his testimony recommended a surcharge. But, I—my—frankly, and I can speak for the Company, *they don't feel that is very appropriate.* The basic purpose then because we are

 denied all of those other rights *the only purpose on an appeal* as I see it against the acts of the Public Utilities Commission *is to establish principle, to establish law,* to establish the rules that they have to follow to protect us *in the future.* Really, all we can ask for is protection on future principle, future methods of how to handle rate cases, and future rights of the Company. The dollars, I don't see how we can get."

 Transcription of Portion of Oral Argument Heard on March 3, 1980, in Pocatello, Idaho. *Utah Power & Light Co. v. Idaho Public Utilities Commission,* 102 Idaho 282, 629 P.2d 678 (emphasis added).

9. UP & L argues that this Court should authorize the use of surcharges by the PUC because the PUC has granted surcharges to utilities on several occasions in the past. We intimate no views as to whether the relief afforded by the PUC to other utilities in the past constituted surcharges. Actions taken by the PUC in the past are not now before this Court and cannot control our determination of the legality of their present refusal to grant UP & L a surcharge. Whatever the PUC's actions have been in the

Additionally, I.C. § 61–624 [10] limits the manner in which the PUC "may alter or amend the order appealed from" pursuant to I.C. § 61–629. This provision permits the PUC to amend or alter an order in a prospective manner only. "Any order ... shall ... have the same effect as is herein provided for original orders or decisions," i.e., prospective effect only. I.C. § 61–624. *See* I.C. § 61–502. Therefore, an order by the PUC allowing UP & L to expand its rate base and its rate of return can be only of a prospective nature. The intent of the statute would be circumvented by a holding that would allow utilities to obtain a surcharge to make up past rate deficiencies on the premise that customers were only being surcharged prospectively.

## D. REQUIREMENT OF STAY, BOND AND INDIVIDUAL ACCOUNTING

If this Court were to accept UP & L's arguments and permit the PUC to award surcharges on rehearing, the protections afforded non-petitioning parties by I.C. §§ 61–634, –637 and –638 would be rendered incomplete and almost meaningless.

I.C. § 61–634 provides that a court order staying or suspending a PUC decision shall not become effective until a suspending bond has been executed in compliance with I.C. § 61–637 which provides that:

"In case the order or decision of the commission is stayed or suspended, the order of the court shall not become effective until a suspending bond shall first have been executed ... sufficient in amount and security to insure the prompt payment, by the party petitioning for the review, of all damages caused by the delay in the enforcement of the order or decision of the commission ... in case said order or decision is sustained. The court ... shall also by order direct the public utility affected to pay into court ... all sums of money which it may collect from any corporation or person in excess of the sum such corporation or person would have been compelled to pay if the order or decision of the commission had not been stayed or suspended."

I.C. § 61–638 requires an individual accounting of all moneys paid by utility customers pursuant to a court order staying a PUC order lowering utility rates pending the outcome of an appeal to this Court:

"In case the court stays or suspends any order or decision lowering any rate, ... the commission, upon the execution and approval of said suspending bond, shall forthwith require the public utility affected ... to keep such accounts verified by oath, as may in the judgment of the commission suffice to show the amounts being charged or received by such public utility, pending the review, in excess of the charges allowed by the order or decision of the commission, together with the *names and addresses* of the corporations or persons *to whom overcharges will be refundable* in case the charges made by the public utility, pending the review, be not sustained by the court.... Upon the final decision by the court, all moneys which the public utility may have collected, pending the appeal in excess of those authorized by such final decision ..., shall be promptly paid to the corporations or persons entitled thereto ...." (Emphasis added.)

These provisions reflect the legislative intent to insure that there is established a fund out of which persons or corporations injured by the stay of a PUC order may be recompensed. It is clear that the legislature envisioned protecting individual ratepayers by providing that the higher rates collected following a stay of a PUC order be put aside and that if the petitioning party does not prevail upon appeal those

past, it now has notice that any granting of surcharges in the future will be illegal.

10. I.C. § 61–624 provides that:
"The commission may at any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it. Any order rescinding, altering or amending a prior order or decision *shall,* when served upon the public utility affected, have the same effect as is herein provided for original orders or decisions." (Emphasis added.)

rates will be refunded *to the individual ratepayers from whom collected.* These provisions do not treat utility ratepayers as a fungible mass allowing utility ratepayers of the year 1983 to be substituted for those of the year 1978. As manifested by this statute, the legislature did not envision allowing the ratepayers of any particular year to be benefited or burdened by the over or under collection of rates pending appeal. Under UP & L's argument, a utility could sidestep the statutory requirements of initially obtaining a stay of a PUC order lowering the utility's requested rates; of then posting a bond to set aside the difference in the rates under the stay of the PUC order and those under the PUC order before stayed; of going through the labor and cost of making an individual accounting of the customers who might later be entitled to refunds; and last of making refunds to the individual customers overcharged by a stay of a PUC order if that order is later upheld by this Court on review. Under UP & L's argument, a utility could circumvent this intricate statutory scheme by merely filing an appeal with this Court and then collecting a surcharge on rehearing by the PUC. If the legislature intended to give utilities the option, as UP & L contends, of either proceeding by way of the stay and bond procedures or by way of a surcharge surely it would have so stated. If it be that our assessment of the statutory scheme is incorrect, the legislature is available to take appropriate action.

## II.

■ UP & L contends that the PUC erred in refusing to hold hearings on the merits of UP & L's petition subsequent to and in response to this Court's decision in *UP & L I,* the PUC's refusal being based upon its determination that it had no jurisdiction to order a surcharge: "It would be purposeless for us to embark upon proceedings to determine how Order No. 13448 should be altered or amended to meet the objections of the Supreme Court of Idaho stated in [*UP & L I*]."

UP & L cites this Court to *Intermountain Gas Co. v. Idaho Public Utilities Commission,* 97 Idaho 113, 540 P.2d 775 (1975), for the proposition that the PUC is required to proceed upon a full hearing when a PUC order has been set aside by this Court on appeal. We there stated:

"[A]ny order by the Commission compelling Intermountain to discontinue its business of the retail sale of gas appliances without a full hearing preceded by notice cannot be upheld."

*Id.* at 130, 540 P.2d at 795.

UP & L misconstrues our statement in that case. We merely stated that the PUC could not affirmatively order Intermountain Gas Company to discontinue an allegedly independent business without the full benefit of a hearing. We did not say that the PUC was required to hold hearings in every instance whatsoever.

I.C. § 61–629 governs appeals from orders of the PUC and proceedings undertaken after appeal. It provided, in pertinent part:

"Upon the hearing the Supreme Court shall enter judgment, either affirming or setting aside the order of the commission. In case the order of the commission is set aside the commission, upon its own motion or upon motion of any of the parties, *may* alter or amend the order appealed from to meet the objections of the court in the manner prescribed in section 61–624, Idaho Code." (Emphasis added.)

Under this statute, it is the PUC which initially determines whether to amend or alter a PUC order if an order is set aside by this Court. In a case such as the present one where the PUC correctly held that it did not have jurisdiction to grant the requested relief of a surcharge, the PUC was equally correct in declining to embark on a fruitless course of proceedings.

Accordingly, we *affirm.*

DONALDSON, C.J., and OLIVER, J. (pro tem) concur.

SHEPARD, Justice, dissenting.

This action arose in 1976 when appellant Utah Power & Light applied for an increase in its rates. The commission denied a substantial portion of that requested rate increase, and an appeal to this Court followed. *Utah Power & Light v. Public Util. Comm'n*, 102 Idaho 282, 629 P.2d 678 (1981). Four members of this Court joined in that opinion, holding that the rates set by the commission were unjust, unreasonable, and thus confiscatory. The amount of that confiscation was in excess of six million dollars. The Court cited *Intermountain Gas Co. v. Idaho Public Util. Comm'n*, 97 Idaho 113, 540 P.2d 775 (1975), wherein a unanimous court, quoting from *Bluefield Waterworks & Improvement Co. v. Public Service Comm'n of West Virginia*, 262 U.S. 679, 690, 43 S.Ct. 675, 678, 67 L.Ed. 1176 (1923), stated:

> "The question in the case is whether the rates prescribed in the commission's order are confiscatory and therefore beyond legislative power. Rates which are not sufficient to yield a reasonable return on the value of the property used at the time it is being used to render the service are unjust, unreasonable and confiscatory, and their enforcement deprives the public utility company of its property in violation of the Fourteenth Amendment. This is so well settled by numerous decisions of this court that citations of the cases is scarcely necessary." *Intermountain Gas Co. v. Idaho Public Util. Comm'n, supra,* 97 Idaho at 125, 540 P.2d at 787.

Hence, it was held in *Utah Power & Light v. Idaho Public Util. Comm'n, supra,* that the commission had unconstitutionally confiscated the property of Utah Power & Light. Upon remand to the commission, the utility petitioned for the allowance of a surcharge to recover the moneys of which it had been deprived by the commission's previous order. Implicit in the commission's order denying any relief is the assertion that, although Utah Power & Light has sustained a six million dollar confiscation, it shall swallow its loss—certainly a strange application of constitutional principles. I deem it even more strange that on appeal to this Court, exactly the same conclusion is reached, *i.e.,* Utah Power & Light shall swallow its loss.

In the 18 pages of the majority opinion, there is no consideration given to whether, as contended by the commission, a surcharge is illegal and beyond the jurisdiction of the commission since it constitutes "retroactive ratemaking." Although it is clear that the commission in the past has itself utilized surcharge rates, the majority, by grand fiat, states, "Whatever the PUC's actions have been in the past, it now has notice that any granting of surcharges in the future will be illegal." Not a scrap of authority is cited for such statement, nor is the reader afforded any rationale therefor.

The actions of the author of the majority opinion can perhaps be understood and accepted in view of his dissenting language when the cause was originally before the court:

> "Rate-making decisions are properly to be made either by the legislature or by the Commission which the legislature created for that very purpose. To those who are dissatisfied with the Commission's decision, other than under I.C. 61–629, *it seems to me that any petition for redress should be made to the legislature itself."* *Utah Power & Light v. Idaho Public Util. Comm'n, supra,* 102 Idaho at 295, 629 P.2d at 691.

As to the remaining members of the majority, I can only speculate and wonder as to this unexplained deviation from their original positions.

The argument against the imposition of a surcharge in this case is two-pronged: that the commission has no jurisdiction to approve such a surcharge, and that to do so would in effect be retroactive ratemaking. As to the first prong, the commission clearly has jurisdiction, in that the surcharge is a rate and the setting of rates is statutorily within the exclusive jurisdiction of the commission. I.C. §§ 61–502, 61–503. As was stated by this Court in *Washington Water Power Co. v. Kootenai Environmental Al-*

*liance,* 99 Idaho 875, 879–880, 591 P.2d 122, 126–127 (1979):

> "[W]hile jurisdiction of the Commission is to be strictly construed once jurisdiction is clear the Commission is allowed all power necessary to effectuate its purpose. 'Every power expressly granted, or fairly to be implied from the language used, where necessary to enable the Commission to exercise the powers expressly granted should be afforded.' *United States v. Utah Power & Light Co., supra,* 98 Idaho at 667, 570 P.2d 1353...

> \* \* \* \* \* \*

> "The statutes reflect the legislative grant of authority to the Commission to deal broadly with existing and future rates, rates schedules and contracts affecting the rates."

In view of the commission's assertions of jurisdiction broad enough to encompass regulation of political mailings (*see Washington Water Power Co. v. Kootenai Environmental Alliance, supra*); the regulation of credit cards (*see Lemhi Telephone Co. v. Mountain States Tel. & Tel. Co.,* 98 Idaho 692, 571 P.2d 753 (1977)); the forfeiture of water rights (*see Idaho Power Co. v. State of Idaho,* 104 Idaho 575, 661 P.2d 741 (1983)); the forced discontinuance of appliance sales (*see Intermountain Gas Co. v. Idaho Public Util. Comm'n,* 97 Idaho 113, 540 P.2d 775 (1975)); and the rate of return which may be earned by a non-utility affiliate (*see Washington Water Power Co. v. Idaho Public Util. Comm'n,* 105 Idaho 276, 668 P.2d 1007 (1983)), the plaintive plea of the commission, affirmed by this Court, can be characterized as nothing but ludicrous.

As to the assertion that a surcharge constitutes retroactive ratemaking, it is indeed a subject of substantial debate. However, the majority favors us with no authority, pro or con, but merely gives us its cryptic fiat. It was stated in *Petition of Allied Power & Light Co.,* 133 Vt. 586, 350 A.2d 360, at 364 (1975), that a utility should be allowed to recoup rate increases forestalled by lengthy litigation, because "[t]o hold otherwise would be both unfair and contrary to the policy in these cases that declares in a utility a right to those rates which are determined to be just and reasonable, and permit a fair return." In the instant case a grant of a surcharge is the same as a final order treating the original request, rather than being a retroactive mechanism for imposing charges. Other jurisdictions have ruled such a surcharge to be permissible. *Wisconsin's Environmental Decade, Inc. v. Public Serv. Comm'n of Wisconsin,* 98 Wis.2d 682, 298 N.W.2d 205 (Wis.App.1980); *California Mfrs. Ass'n v. P.U.C.,* 24 Cal.3d 251, 155 Cal. Rptr. 664, 595 P.2d 98 (1979); *Potamac Electric Power Co. v. Public Serv. Comm'n,* 380 A.2d 126 (D.C.App.1977), *vacated on other grounds,* 402 A.2d 14, *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *Duquesne Light Co. v. Pa. Pub. Util. Comm'n,* 31 Pa.Cmwlth. 118, 376 A.2d 668, 670 (1977); *Petition of Allied Power & Light Co.,* 133 Vt. 586, 350 A.2d 360 (1975); *see generally* Howe, *Recoupment: an Experiment in Vermont,* 109 Pub.Util.Fort. 58 (May 27, 1982); *Rate Recoupment Authorized,* 108 Pub.Util. Fort. 48 (Sept. 10, 1981); *Electric Utility Emergency Surcharge Granted,* 106 Pub. Util.Fort. 55 (July 31, 1980); *The Problem of Retroactive Rates,* 105 Pub.Util.Fort. 63 (June 19, 1980).

The essence of the majority opinion is that, since Utah Power & Light did not follow procedural niceties which, for the first time in today's ruling, are deemed the exclusive avenue to avoid confiscation, the utility must suffer the loss. Even assuming that such argument is worthy of consideration in view of constitutional restraints, the majority's opinion is nevertheless seriously flawed. I.C. § 61–635 is, by its express language, permissive rather than mandatory, and despite the linguistic legerdemain of the majority, the word "may" in that statute cannot somehow miraculously be turned into "must." The majority cites, as support for its holding, *Joy v. Winstead,* 70 Idaho 232, 215 P.2d 291 (1950). *Joy v. Winstead* is clearly distin-

guishable from the instant case, and only the most myopic misreading of it gives any guidance here. In *Joy*, a rate had been sought from and denied by the Public Utilities Commission. The company in district court sought and gained an injunction against the Public Utilities Commission which would permit collection of the full rate increase sought. A writ of prohibition was sought in the Supreme Court, challenging the district court's jurisdiction to so enjoin. In *Joy*, therefore, a stay had issued by the district court against the interim imposition of the lower rates by the commission. Hence, anything which the opinion of the Court might have implied regarding a situation involving the non-issuance of a stay is, at best, dicta not necessary to the decision. The case stands merely for the proposition that the district court had jurisdiction to grant the requested stay. If nothing else, the majority citation of *Joy* is startling, considering *Joy's* repeated reference to the protection of constitutional rights, which reference was necessary because of the commission's violation of due process rights in the setting of confiscatory rates.

The majority opinion argues, contrary to the express language and spirit of I.C. § 61–635, that the utility's interests are safeguarded by the existence of the right to request, and to possibly receive, a stay by the appellate court of the commission's order. The majority relies on the idea that the issuance of such a stay is not discretionary with the reviewing court, but is mandatory upon the utility's demonstration of impending irreparable damages to the utility's interests. The majority's analysis assumes, of course, that this Court will always recognize the propriety of a stay, and that it will never erroneously deny a stay but then later rule for the utility on the merits. Does the majority imply that in every rate setting matter appealed to this Court, upon application a stay will automatically issue restraining the implementation of the rates set by the commission? If so, such will indeed be a drastic change from the practice and procedure of public utility law in the State of Idaho.

In brief, it is my view that the rates set by the commission are confiscatory and in violation of the constitutional rights of Utah Power & Light. This Court, in spite of its fine record of concern for constitutional rights in every other area of the law, announces that it must stand helplessly by because of obscure, ambiguous procedural nuances. I cannot agree.

The majority's result is particularly difficult to understand in view of *Frizzell v. Swafford*, 104 Idaho 823, 663 P.2d 1125 (1983), wherein the Court held unconstitutional a requirement that a bond be posted to effectuate an appeal. I would again set aside the order of the commission and remand with clear instructions that a temporary surcharge be established in such amount and for such period of time as will allow the utility to recoup its loss.

BAKES, J., concurs.

BAKES, Justice, dissenting:

The majority in this case is in effect ruling that Utah Power & Light's only recourse from an adverse PUC order, which denies them the right to collect fees to which they are entitled and thus confiscates their property, is for Utah Power & Light to request a stay of the order pending appeal and post a bond. The Court holds that if Utah Power & Light fails to post such a bond pending appeal, then even though the utility's property has been effectively confiscated there is no hope of recovery because of the failure to file such an appeal bond. By denying the utility a right to impose a surcharge, the majority makes the filing of a bond mandatory. This Court-imposed requirement of a mandatory bond pending appeal is both contrary to the statute, which uses the permissive word "may", not the mandatory word "shall", and is in conflict with this Court's recent opinion in *Frizzell v. Swafford*, 104 Idaho 823, 663 P.2d 1125 (1983). In that case we struck down the requirement that a party file an appeal bond, saying that the requirement of such a bond is a violation of due process.

In *Frizzell* we noted that "[a]ppellant contended the execution procedure and the requirements of I.R.C.P. 81(1) and I.C. §§ 1–2311 through –2313, which condition a right to appeal on payment of fees and a bond, were an unconstitutional taking of property without due process." In this case the majority upholds a mandatorily required appeal bond, seemingly ignoring its opinion in *Frizzell*. The majority in *Frizzell* noted the mandatory nature of the bond, stating:

> "A party in a small claims action may appeal a judgment by filing a notice of appeal within thirty days. According to I.R.C.P. 81(m), the party appealing may prevent execution on the judgment against him by filing a bond in the amount of the judgment at the time of filing a notice of appeal. However, contrary to the implication of I.R.C.P. 81(m), the bond to secure payment of judgment (supersedeas bond) is not optional (to prevent execution pending appeal) but mandatory." *Id.* at 826, 663 P.2d 1125 (footnotes omitted).

In the present case the majority has ruled that the payment of a bond to "secure payment of judgment" (secure repayment of rates) is not optional, but mandatory, and the only way a party (public utility) appealing may prevent "execution on the judgment against him" is by the filing of a bond in the amount of the "judgment." In *Frizzell* we ruled that this procedure was a violation of due process. The majority is inconsistent in upholding the bond procedure in this case, while striking it down in *Frizzell*.

Treating the appellant in this case, a public utility, differently from a small claims appellant merely because of its status, or the size of its assets, or the nature of the appeal, is a violation of equal protection. There is no indication of a rational basis for the different treatment of these two appellants. Thus, the majority is doubly incorrect in first refusing to acknowledge that the legislature did not intend the bond procedure to be mandatory and, secondly, by refusing to apply the same due process standard to that mandatory bond requirement as it did in the *Frizzell* case.